## SCOTT'S EX'RS *v.* CITY OF SHREVEPORT.[1]

*(Circuit Court, W. D. Louisiana.* May Term, 1884.)

1. PRESCRIPTION—EFFECT OF PLEDGE—INTERRUPTS AGAINST PRINCIPAL OBLIGATION.

    The pledge of a thing, legally made, in Louisiana is a tacit acknowledgment of the debt, and interrupts prescription against the principal obligation.

2. MUNICIPAL CORPORATIONS—POWERS.

    A municipal corporation can exercise only the powers expressly granted to it, —those fairly implied from the granted powers, and those essential and indispensable to its declared objects.

3. SAME—POWER TO PLEDGE CITY PROPERTY.

    The power to pledge city property is not essential to the declared objects of a municipal corporation in Louisiana, and when an act incorporating a city contains no rules relating to the pledging of municipal property, the city has no power to do so.   Civil Code, § 3151.

4. PLEA OF PRESCRIPTION—TACIT ACKNOWLEDGMENT OF DEBT BY MUNICIPAL CORPORATION.

    Where city authorities turn over bonds to creditors, the act not being that of the municipal corporation, because illegal, it is not a tacit acknowledgment of the debt so as to preclude the city from setting up a plea of prescription.

5. MUNICIPAL CORPORATION—AUTHORITY OF AGENT—POWER OF CITY—SUBSEQUENT ACTS CANNOT MAKE VOID OBLIGATIONS BINDING.

    Where an agent of a municipal corporation has no authority to bind a city by giving notes, because the city has no authority to raise money to donate to a railway company, no subsequent act of the municipal authorities can make the obligation binding.

6. SAME—POWER TO DONATE AID TO RAILWAY COMPANY—OBLIGATION NOT BINDING UNLESS AUTHORITY TO ISSUE.

    In the absence of express power, a municipal corporation cannot incur any binding obligation when its authorities borrow money in the name of the city for the purpose of donating pecuniary aid to a railway company.

At Law.

*Wise & Herndon,* for plaintiff.

*W. A. Seay,* for defendant.

BOARMAN, J.   The defendant is a municipal corporation; the official representatives thereof being desirous of donating certain city lots to the Texas Pacific Railway Company for depot purposes, issued 260 $1,000 bonds. The bonds recite the purpose for which they were issued. In order to raise the money for the purchase price of the several lots, the 260 bonds were placed in the hands of a special agent, to be sold or used by him in any way he thought best to secure the sum required. At Philadelphia he executed a promissory note with himself, individually, and Thomas A. Scott, as the drawers, for $67,590, "payable to the order of ourselves, 90 days after date." He pledged the 260 bonds as collateral security to secure the holder thereof, and by discounting the note, about $67,000 were realized and paid as a part of the purchase price of the several lots which were donated to the company. This note not being paid at maturity, an extension of 90 days was effected by the agent, who gave a new note similar in

[1] We are indebted to Talbot Stillman, Esq., of the Monroe, Louisiana, bar, for this opinion.

every particular as to the first note, except as to the amount. Thomas A. Scott, now deceased, whom the plaintiff represents, after the maturity of the second note, paid the holder thereof $22,259, and the matter remained without settlement until in A. D. 1875, a compromise settlement, in pursuance of a city ordinance, was entered into by all the parties in interest. In making this settlement the mayor was directed by an ordinance of the city to execute and sign the three notes now sued on, which are as follows: One note for $8,373.20, due 90 days after date; one for $13,292.94, due one year after date; one for $14,162.59, due two years after date; all amounting to $36,328.73, and bearing date February 20, 1875. The first of these notes was made payable to Jemeson & Co., and the others to Scott, who now holds all of them. Four thousand dollars were paid on the sum of these notes December 20, 1875; the last of the notes became due February 20, 1877, and this suit was filed April 15, 1882.

Defendant pleads the prescription of five years against the notes; besides, he presents several strong grounds of defense on the merits of the suit. The only payment made on the notes was made more than five years before the institution of the suit; it follows that the plea of prescription must protect the defendant, unless, as is contended by plaintiff's counsel, the pledge of the bonds was a tacit acknowledgment of the debt and a complete interruption of prescription during the time the thing pledged remains in the hands of the pledgee. The authorities in Louisiana are clear enough that the pledge of a thing, legally made, is a tacit acknowledgment of the debt, and interrupts prescription against the principal obligation. But, in answer to this view, defendant holds that the bonds were never legally pledged to the holder of the notes, or to any one else. The Civil Code, after laying down a number of rules on the subject of pledge, showing what formalities are required in giving a valid pledge, in article 3150, provides: "The property of cities and other corporations can *only* be given in pledge according to the rules, and subject to the restrictions, prescribed on their heads by their respective acts of incorporation."

The acts incorporating the city of Shreveport contain no rules or restrictions relating to the pledging of municipal property; and in these acts, so far as I have been advised, no power to pledge property is anywhere granted. The defendant corporation, like all municipal governments, can exercise the following powers and no others: "*First,* those granted in express words; *second,* those necessarily or fairly implied in or incident to the powers expressly granted; *third,* those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." Dill. Mun. Corp. 173; *Wilson* v. *City of Shreveport,* 29 La. Ann. 674. The power to pledge the property of the city is not an expressed power, and it is not one of the powers which the Louisiana courts have ever held to be essential to the declared objects and purposes of a corporation.

If no rules or restrictions, such as are suggested in article 3150,

appear in any of the several acts affecting the defendant city, it follows that the power to pledge these bonds never lawfully belonged to the authorities representing the city in making the compromise settlement.

It is further contended by the city attorney that the things pledged—the 160 city bonds—were not then and are not now, in law, of any value. While it is true that, so far as they bind the city to pay anything, they are wholly worthless, it is hardly necessary to discuss the point as to whether a city bond that no one is bound in law to pay, can, when it is given in pledge under legal formalities to secure the payment of a valid note, interrupt the running of prescription against the note; for, it is now sufficient to say that the city authorities, exercising only the limited powers of a municipal corporation, were wholly without the power, in law, to pledge or put in pledge anything belonging to the corporation; that no legal effect, such as is claimed by plaintiff's counsel, is deducible from the placing of these bonds into the hands of the holder of the notes. The city authorities, making the compromise settlement in 1875, had no lawful power to put these bonds in the hands of the creditors as a pledge. The creditors knew this fact, and they must have known, even if the debt for which the notes were given was a valid debt against the corporation, that the city authorities, with whom the creditors compromised, could not, in the absence of an expressed power, make a valid pledge of the bonds which they now claim to hold as collateral security. The act of the city authorities in turning the 170 bonds over to the holders of the compromise notes was not the act of the municipal government, and there could have been no tacit acknowledgment of the existence of the debt, even if it is valid, caused by the fact that these bonds remained in the hands of the holders of the notes. The city, by these unauthorized acts of the authorities, cannot be precluded from successfully setting up the plea of prescription. While there can be but little room for doubt that the obligation, if there ever was any, evidenced by these three notes has been extinguished by prescription, yet I prefer to discuss and pass upon, as the turning point in this suit, the fact that the special agent at Philadelphia, in 1873, acting for defendant, in the matter in which the first and second notes were given, was without authority to bind the defendant, because the corporation had no authority in law to raise money, or to expend the money of the city, for the purpose of making a donation to the railway company; and no subsequent action of the authorities novating or compromising the debt can vitalize it into a binding obligation.

It is in proof in this case that 90 of the said 260 bonds came into the hands of C. E. Lewis, who sued defendant in the United States circuit court for the interest thereon; that the supreme court affirmed the judgment of the circuit court, which was for the defendant. *Lewis v. City of Shreveport,* 108 U. S. 282; S. C. 2 Sup. Ct. Rep. 634. The supreme court said:

"Unless specific authority has been given by the legislature to the municipal corporation to grant pecuniary aid to railroads, all bonds purporting on their face to be for such purposes are void. In this case no such power has been granted, and there is nothing in the charter of Shreveport from which any such power can be inferred."

This decision of the supreme court cannot be limited to the view that it merely declares the want of authority to issue the bonds, which are only evidences of a debt; but it reaches further, and, in the absence of this expressed power, denies that a municipal corporation incurs any binding obligation when its authorities raise or borrow money in the name of the city for the purpose of donating pecuniary aid to a railway company. If the authorities of the city could not incur a debt for the purpose mentioned, it follows that no action or effort on their part, however repeatedly or persistently made, to ratify, settle, or compromise a debt, unlawfully incurred as this was, can result in imposing any obligation on the city which the law will enforce.

The proof shows that the notes given by the city's agent in 1873 are the evidences of a loan made to the city for the purpose of enabling the city to donate pecuniary aid to a railway company; and the three notes now sued on were given in compromise of the debt evidenced by the said note. All these transactions were without legal effect against the defendant, and no recovery can be had on this cause against the corporation.