J. J. Van Eaton et al., Appellees, v. Town of Sidney et al., Appellants.

No. 40022.

June 23, 1930.

Rehearing Denied February 10, 1931.

*Thornell, Thornell & Adams* and *Clark, Byers & Brunk,* for appellants.

*Cook & Cook, George A. Lee,* and *Tinley, Mitchell, Ross & Mitchell,* for appellees.

ALBERT, J.—At an election duly held on January 9, 1928 (all preceding requirements of the statute having been complied with), a proposition was submitted to the voters of the town of Sidney, Iowa, the substance of which was, Shall the town of Sidney establish, erect, extend, purchase, maintain, and operate an electric light plant, providing and on condition that the funds and money necessary therefor shall not be raised by a bond issue or by taxes or by any kind of assessment or levy against the property taxable in and by the town of Sidney? And further providing that the same should be financed by some company, corporation, or concern other than the town of Sidney, on the express agreement and understanding that the town should not be liable or obligated in any way for such funds, except that it should pledge, as security for the payment of said funds and moneys, all transmission lines, poles, the power plant, and all apparatus, engines, and equipment, and should also pledge, as security for payment of said funds and moneys, the net income from said plant and from the sale of electricity, after the payment of all expenses, repairs, and upkeep, and the setting aside of a fund of at least $500 a year for maintenance. The result of this election was a vote of 194 in favor of said proposition and 47 against.

On February 10th following, the town council passed a resolution to enter into a contract with the Fairbanks Morse Company, to purchase certain machinery for a municipal electric light and power plant; and the town then proposed to construct and maintain a plant sufficient to meet the needs of the town, consisting of a site, plant, building, and certain machinery and equipment necessary to the proper construction and operation of said electric light and power plant and distribution system, as per certain specifications prepared by the Municipal Utilities Company of Des Moines, Iowa.

On February 10, 1928, the town of Sidney entered into a written contract with Fairbanks Morse Company to purchase certain engines and electrical equipment in the sum of $53,460, to be paid in 120 pledge orders, payable in consecutive monthly payments, said orders varying in amount. The contract further provided that such orders were not to be the general obligations of the town, but special obligations, payable only from the revenues

of the light and power plant, as provided in appropriation ordinance of said town of Sidney, said orders to bear 6 per cent interest.

It further provided that the title and ownership to the machinery and material therein specified should remain in the company until final payment had been made, and, in the event that pledge orders were taken at any time, representing deferred payments for any sum that might be due, the title to the machinery and material should not pass until said pledge orders so given, or extensions thereof, were fully paid in money and satisfied, and, in default of any payments, the Fairbanks Morse Company ''shall have the right to take possession of said machinery or materials, wherever found, without process of law * * * and shall sell the same and account for the proceeds thereof and retain so much of the proceeds of such sale as are necessary to satisfy any balance due * * * together with cost of such removal and sale, and any excess shall be paid to the purchaser.'' It further provided that the purchaser should pay all freight or other charges on said machinery, and should insure such machinery against damages by fire in insurance companies satisfactory to the Fairbanks Morse Company, and continue such insurance in force until the amount due should be fully paid, the loss, if any, being made payable to the Fairbanks Morse Company. In case of failure to procure such insurance, the Fairbanks Morse Company was entitled to obtain the same at the town's expense. The town was to make good any loss to the Fairbanks Morse Company by reason of any damages to machinery or material caused by fire, carelessness, or other injuries.

On February 20, 1928, the town of Sidney passed an ordinance, the material part of which is that, to pay the interest on and the principal of a series of orders to be issued to the said Fairbanks Morse Company of Omaha, Nebraska, in payment for machinery, there is appropriated and set aside monthly from all sums of money received from the operation of the electric light plant of said town, when completed, over and above the actual operating expenses thereof, such sums of money as will create a fund sufficient to pay the interest on and the principal of said orders. Such fund shall be used to pay the interest on and the principal of said orders, monthly, as same mature, and for no other purpose. The aforesaid orders and interest thereon are not

a general obligation of the said town, but a special obligation payable only out of said fund created from the earnings of said plant, which are hereby pledged as security for the payment of said obligations.

The lower court held this contract void, and granted the prayer of plaintiffs' petition asking that the defendants be enjoined from issuing these pledge orders.

The first question urged on our attention is that this contract is invalid because there was no power in the city to make such a contract.

Regardless of what the law may be in other states, it is settled in this state that a municipality has no inherent power to make a contract of this kind. A municipality is wholly a creature of  the legislature, and possesses only such powers as are conferred upon it by the legislature: that is, (1) such powers as are granted in express words; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred; or (3) those necessarily essential to the identical objects and purposes of the corporation, as by statute provided, and not those which are simply convenient. 1 Dillon on Municipal Corporations (5th Ed.), Section 237; *Clark v. City of Des Moines,* 19 Iowa 199; *City of Clinton v. Cedar Rapids & M. R. R. Co.,* 24 Iowa 455; *Heins v. Lincoln,* 102 Iowa 69; *State ex rel. White v. Barker,* 116 Iowa 96; *State ex rel. County Attorney v. Des Moines C. R. Co.,* 159 Iowa 259; *Merrill v. Monticello,* 138 U. S. 673 (34 L. Ed. 1069).

In *City of Clinton v. Cedar Rapids & M. R. R. Co.,* supra, Judge Dillon wrote:

"Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the *corporation* could not prevent it. We know of no limitation on the right so far as the corporations themselves are concerned. They are, so to phrase it, the mere *tenants at will* of the legislature.

This plenary power on the part of the legislature over public corporations, saving vested rights of property and of creditors, is a doctrine so well settled that it is unnecessary to refer to more than a few cases asserting it."

In *State ex rel. County Attorney v. Des Moines C. R. Co.*, supra, this court cited *Grand Rapids E. L. & P. Co. v. Grand Rapids E. E. L. & F. G. Co.*, 33 Fed. 659, where it is said:

"It is too well settled to need the citation of authorities in its support that municipal corporations, which are mere political agencies of the government, forming but parts of the machinery employed in carrying on the affairs of the state, possess and can exercise *only* such powers as are 'granted in *express words*, or those *necessarily* or *fairly* implied in or incident to the powers expressly conferred, or those *essential* to the declared objects and purposes of the corporations, not simply convenient, but *indispensable.*' "

When the legislature attempts to make a grant of power to a municipality and the same is doubtful or uncertain, all doubts and uncertainties are resolved against the municipality. *Clark v. City of Des Moines*, supra. All powers conferred are to be strictly construed, and in case of reasonable doubt, the power should be denied. *Clark, Dodge & Co. v. City of Davenport*, 14 Iowa 494; *Clark v. City of Des Moines*, supra; *City of Keokuk v. Scroggs*, 39 Iowa 447; *Brooks v. Incorporated Town of Brooklyn*, 146 Iowa 136; *State ex rel. County Attorney v. Des Moines C. R. Co.*, supra; *City of Chicago v. M. & M. Hotel Co.*, 248 Ill. 264 (93 N. E. 753); *City of South Bend v. Chicago, S. B. & N. I. R. Co.*, 179 Ind. 455 (101 N. E. 628); *People ex rel. Iddings v. Dreher*, 302 Ill. 50 (134 N. E. 22); *People ex rel. Friend v. City of Chicago*, 261 Ill. 16 (103 N. E. 609); *Barnard & Miller v. City of Chicago*, 316 Ill. 519 (147 N. E. 384); *City of Ft. Scott v. W. G. Eads Brokerage Co.*, 54 C. C. A. 437 (117 Fed. 51); *City of Chicago v. Ross*, 257 Ill. 76 (100 N. E. 159, 43 L. R. A. [N. S.] 205); Cooley's Constitutional Limitations (2d Ed.) *199.

Powers conferred upon a municipality cannot be enlarged by liberal construction. *Clark, Dodge & Co. v. City of Davenport*, supra; *City of Burlington v. Kellar*, 18 Iowa 59; *Logan & Sons v. Pyne*, 43 Iowa 524; *Bear v. City of Cedar Rapids*, 147 Iowa 341; *Ebert v. Short*, 199 Iowa 147; *State ex rel. County At-*

*torney v. Des Moines C. R. Co.,* supra; *Merriam v. Moody's Exrs.,* 25 Iowa 163.. It is not enough that it be useful or convenient; it must be indispensable. *State ex rel. County Attorney v. Des Moines C. R. Co.,* supra; *People ex rel. City of Olean v. Western New York & Pa. Traction Co.,* 214 N. Y. 526 (108 N. E. 847).

Where a statute confers certain specific powers, those not enumerated are withheld. In other words, enumeration of powers operates to exclude such as are not enumerated. *State ex rel. County Attorney v. Des Moines C. R. Co.,* supra; *Scott v. City of La Porte,* 162 Ind. 34 (68 N. E. 278, same case on rehearing, 69 N. E. 675); *Mayor v. Ray,* 19 Wall. (U. S.) 468 (22 L. Ed. 164); *People ex rel. Attorney General v. Utica Ins. Co.,* 15 Johns. (N. Y.) 358 (8 Am. Dec. 243); *Wilfong v. Ontario Land Co.,* 96 C. C. A. 293 (171 Fed. 51); *Farmers & Merch. Nat. Bank of Valley City v. School District,* 6 Dak. 255 (42 N. W. 767); *City of Chicago v. M. & M. Hotel Co.,* supra; *City of South Bend v. Chicago, S. B. & N. I. R. Co.,* supra; *Barnard & Miller v. City of Chicago,* 316 Ill. 519 (147 N. E. 384); *People ex rel. Friend v. City of Chicago,* 261 Ill. 16 (103 N. E. 609, Ann. Cas. 1915A, 292); 1 McQuillan on Municipal Corporations (2d Ed.) 926, Sec. 370. Neither can it issue bonds under an implied power; it must have express power therefor. *Heins v. Lincoln,* 102 Iowa 69.

Section 5714, Code, 1927, provides:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days."

Section 5738. "Cities and towns are bodies politic and corporate, under such name and style as may be selected at the time of their organization, with the authority vested in the mayor and a common council, together with such officers as are in this title mentioned or may be created under its authority, and shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character, not inconsistent with the statutes of the state, for the protection of their

property and inhabitants, and the preservation of peace and good order therein, and they may sue and be sued, contract and be contracted with, acquire and hold real and personal property, and have a common seal.''

Section 6127 provides:

''Cities and towns shall have the power to purchase, establish, erect, maintain, and operate within or without their corporate limits, * * * electric light or power plants, with all the necessary * * * poles, wires, * * * machinery, apparatus, and other requisites of said works or plants * * *.''

Other statutes provide for the submission of this question to the voters at a special election, etc.; but, as no question is raised as to the regularity or result of the election in this case, we give no further attention to it.

There is and can be no dispute that, under this section, power is given to the town to purchase, establish, erect, and maintain an electric light and power plant when the necessary prerequisites have been complied with. When such question has been duly submitted to the electors, and a majority of them have voted in favor of the purchase or erecting of an electric light plant, Section 6134, among other things, provides that they shall have the power (2) ''to issue bonds for the payment of the cost of establishing the same, including the cost of land condemned on which to locate them.''

Adverting to the propositions submitted to the voters herein, it will be noted that it was therein provided that no bonds should be issued for the erection of this electric light plant. The contract under consideration provided for the sale of this machinery to the city, to be paid for by pledge orders, as hereinbefore specified. The question therefore is, Did the city have the power to make the contract under consideration for the purchase of said machinery, to be paid for as therein specified? That it had the power to purchase machinery of this character cannot be questioned; but did it have the power to make a contract in which it agreed to pay for said machinery through pledge warrants, supported by an ordinance pledging such machinery and the net income from a plant to be constructed, to the payment of such pledge warrants on future dates? Under the provisions of the above-quoted statutes, no such power is specifically or expressly given; and if such

power exists, it must be implied. It is also true that, when the right is claimed under an implied power to do a thing in a certain way, it must be absolutely necessary that it should be done in that way, in order to exercise the power conferred. If it is not thus necessary, the fact that it is convenient or useful to do it in that way will not authorize the presumption of an implied power.

Under these rules, in the case before us, the fact that it may be useful or convenient to the corporation to buy this machinery and pay for it by pledge warrants will not authorize the conclusion that it has the implied power to do so, because it is not absolutely necessary to attain the end sought, the statute providing that it may issue bonds and pay the same by taxation. It follows, therefore, that the contract entered into is void and of no effect.

Further than this, another question seems to be quite controlling, and that is the question of whether a city has power to pledge the income from its property for a definite period in the future. As to this question, the same general rules of construction apply that have been heretofore stated. There is no statute in this state conferring express power, in terms, upon a city to pledge its property, either personal or real, and we are unable to find any holding that there is inherent or implied power so to do.

Before we proceed further on this question, it may be wise to state some additional facts. At the inception of this contract, the town of Sidney was not the owner of, nor did it possess, an electric light plant. The town not only needed the engine and electric attachments purchased under this contract from the Fairbanks Morse Company, but it must also acquire a site, a building, and all of the wires, poles, and other equipment necessary to a complete electric light plant; and it was from such a complete electric light plant that the rents, income, and profits were to be used, as a basis or fund with which to pay the pledge warrants provided for. We think this situation is the basis and the controlling question in the case. Had the city the power to thus pledge the income from this property for an indefinite period of time in the future? The general principles and rules of construction heretofore set out are to be applied to this situation. There is no statute of the state conferring such power, in terms, upon a city to pledge its property, either personal or real, and we are unable to find any principle or authority holding that such power is inherent or implied.

In *Mullarky v. Town of Cedar Falls,* 19 Iowa 21, the city erected a bridge and bonded itself for payment therefor. To secure these bonds, a trust deed was executed, conveying to certain persons, as trustees, said bridge and franchise, and inviolably setting apart tolls and receipts therefrom, after paying expenses and repairs of said bridge, to the payment of said bonds and interest. It was there held that the city had no power to make this trust deed and thus pledge the income from the bridge to the payment of the debt, and that the terms and conditions of the deed of trust could not be regularly and legally enforced. To the same effect, see *Scott's Exrs. v. City of Shreveport,* 20 Fed. 714; *Fidelity Tr. & Guar. Co. v. Fowler Water Co.,* 113 Fed. 560; *Branham v. Mayor and Common Council of San José,* 24 Cal. 585; 43 Corpus Juris 1347.

A review of the many statutes governing municipal corporations in relation to their private property shows that in some instances specific power is given by the legislature to mortgage such property. This is to be taken as an indication that the legislature recognized the fact that such power to mortgage did not exist, and hence legislative enactment was necessary, in order to confer it.

Viewing the case under these well settled rules and the facts in the record, we are necessarily driven to the conclusion that this contract was void and of no effect because of its attempt to pledge the rents, income, and profits of the electric light plant to be constructed in the future; hence we conclude that the decision of the district court was right.

To the end that we may not be misunderstood, we will say that we are not holding that a bond issue is the only method by which an improvement of this kind may be acquired or built.

Other questions are elaborately discussed, and very complete briefs and arguments are presented; but, believing that the question on which we base this opinion is controlling in the situation before us, we give no further attention to the other matters argued.—*Affirmed.*

EVANS, FAVILLE, DE GRAFF, KINDIG, WAGNER, and GRIMM, JJ., concur.

STEVENS, J., takes no part.