There is no material dispute in the facts in this case. In 1934 certain public-spirited citizens of Des Moines, Iowa, mindful of the tremendous toll of life and property being taken as a result of automobile accidents, outlined a safety program with the thought in mind of reducing automobile accidents. They induced the city council to pass an ordinance setting up a motor vehicle testing station for the purpose of testing motor vehicles and trucks. Certain of these citizens loaned their personal credit to build a station, its value being approximately $23,000. Not a cent of the City's money has ever been appropriated or paid into this station for its construction, maintenance or repair, same having been paid for out of earnings of the station. It is conceded by the City that the ordinance establishing this testing station was of doubtful validity at the time it was passed because it was based upon the general welfare powers of the City. However, it is the claim of the City that the ordinance was approved by the 46th General Assembly, chapter 47, Senate File 76, and that this enactment of the Legislature gave to the City of Des Moines additional power respecting the establishment, erection, equipment, operation and maintenance of the motor vehicle testing station. The ordinance now in force and effect setting up the machinery for the testing of motor vehicles is Ordinance No. 4499 of the City of Des Moines, Iowa. The ordinance by its terms specifically repeals *Page 1248 
all ordinances and amendments to ordinance previously passed. It is required by the city ordinance that all persons who regularly operate motor vehicles or trucks upon the streets of the City of Des Moines shall have the same tested twice each year at a cost of fifty cents per test.
The Traffic Safety Council proceeds to collect all fees from the testing of motor vehicles, which during the year 1939 amounted to $43,286.40. The Traffic Safety Council allocates the various moneys received from the testing of motor vehicles into funds of their own selection and choosing. They have set up two funds, one known as the operating fund and one known as the traffic regulation enforcement fund. The reports show that they had no liabilities. That their assets were $34,708.75, and that they had a bank balance of $9,279.76. That the Traffic Safety Council banks the money in a bank in the City of Des Moines of their own choosing. That the expenses are paid by check signed by the Traffic Safety Council drawn upon the said bank fund. That they have never made any contribution to the state sinking fund. That they exercise control not only over the testing station but control of all funds received from the testing of motor vehicles. That none of the funds are paid into the city treasury but are kept by the Traffic Safety Council separate and apart from the city funds. That in the making up of the budget the city council of the City of Des Moines gives no recognition nor does it take into consideration the funds received by the municipal testing station. That the City makes no appropriation or allocation of the funds collected by the Traffic Safety Council. Citizens or taxpayers are given no opportunity to protest the manner in which the money handled by the Traffic Safety Council is spent. The money so received is not reported in or shown as part of the city budget. The municipal testing station of the City of Des Moines is operated by a Traffic Safety Council which is composed of citizens of the City of Des Moines. No fault is found with the manner in which these public-spirited citizens have operated the Traffic Safety Council and one from reading this record can come to no other conclusion than that the Traffic Safety Council has done a good job during this period of time. *Page 1249 
Ben Dyer, a citizen and taxpayer of the City of Des Moines, commenced this action in mandamus to compel the city council to take from the Traffic Safety Council certain funds in their hands, derived from motor vehicle testing fees collected from the owners of automobiles and trucks and that these funds be allocated and appropriated to various funds in accordance with the law. The City of Des Moines filed answer in which it denied that Dyer had any interest in the receipts of the municipal testing station. Denied that said fees are controlled or disbursed by persons not authorized by law and alleged that said testing station was operated under ordinances of the City of Des Moines which were approved by the statutes of Iowa and that said station was regulated, operated and controlled in accordance with said statutes. After a trial, the lower court decreed that the defendants were under legal duty to take possession and control of the funds derived from the testing of motor vehicles and to allocate and appropriate said funds as provided by law and granted the relief requested. The City of Des Moines has appealed.
[1, 2] The appellant argues that a private person instituting a mandamus proceedings must plead and prove his private interest, his personal grievance and that he suffered individual damage. It then argues that mandamus is not a proper remedy to control the acts of municipal bodies when acting on matters in respect of which the City is vested with discretion. Both of these questions have recently been answered by this court in the case of Pierce v. Green, 229 Iowa 22, 39, 294 N.W. 237, 248. Speaking through Justice Bliss, this court said:
"We think the record clearly shows that the plaintiff has alleged and shown such interest as to entitle him under Code section 12448 to bring this action. Cooley states: `A discrimination may be attacked by one discriminated against even though the discrimination does not increase his or its tax.' 1 The Law of Taxation (4th Ed.), section 367.
"Appellees contend that mandamus is not the proper remedy, in that the discretion of the defendants cannot be controlled, and that other plain, speedy and adequate remedy is available *Page 1250 
to the appellant. Mandamus under the statute (Code section 12440) is available to compel the defendants to perform an act which the law enjoins as a duty of their office. These duties which they have knowingly and deliberately refused to perform are imperative duties. They are commands of the legislature. The defendants have no discretion in the matter, with respect to obeying those commands."
We come now to the real question involved in this case. Is the City of Des Moines required under the law to take possession of the funds which come into the hands of the Traffic Safety Council, to require that they be paid into the treasury of the City of Des Moines and there set apart by the city council into the various funds authorized by law that they must be taken into consideration by the city council under the budget law before they may levy or certify in any year any tax upon property subject to taxation? It is the contention of the appellee that under the local budget law it is the mandatory duty enjoined by law upon the city council of the City of Des Moines to set up in the budget the total income of the City other than from taxation and it is the further duty for them to set up the amount proposed to be expended in each and every fund and for each and every general purpose during the year next ensuing. It is the contention of the appellant that Code section 5018.03 grants power to cities to acquire, operate and maintain motor vehicle testing stations and pay for the same out of the proceeds of collection of fees charged for testing motor vehicles. Section 5018.07 sets up the same provision contained in the Code of 1935, section 4992, respecting the mandatory duty of a city having set up a traffic safety council by ordinance to continue to so operate, maintain, supervise and control said station through said traffic safety council.
[3] The City maintains that section 5018.04 grants to cities the additional power to set aside all fees so collected in a separate fund out of which all costs and expenses in connection with the operation and maintenance of said testing station shall be paid. This court has time and again said that power conferred upon a municipal corporation cannot be enlarged by liberal *Page 1251 
construction. In the recent case of Van Eaton v. Town of Sidney,211 Iowa 986, 990, 231 N.W. 475, 477, 71 A.L.R. 820, this court said:
"Powers conferred upon a municipality cannot be enlarged by liberal construction. * * * It is not enough that it be useful or convenient; it must be indispensable."
[4] With this rule of law in mind, we turn now to examine the enactments of our legislature granting to cities and towns the right to erect and maintain testing stations. This authority is found in chapter 251.1 of the Code of Iowa, 1939, under the heading of Motor Vehicles and Law of the Road. Code section 5018.03 is as follows:
"All cities and towns shall have the power to acquire, establish, erect, equip, operate and maintain motor vehicle testing stations therein and to pay for the same out of the proceeds of the collection of fees charged for testing motor vehicles, including trucks."
Section 5018.04 of the Code provides in substance the amount to be charged for said testing fee. It further provides that cities and towns shall have power to set aside all fees so collected in a separate fund, out of which all costs and expenses in connection with or growing out of the construction, establishment, equipment, operation and maintenance of said station shall be paid. Any surplus remaining in said fund shall be paid into a fund for traffic regulation and enforcement.
Section 5018.07 of the 1939 Code is as follows:
"Any city which has set up a traffic safety council, or other body, by ordinance, for the construction, operation and maintenance of any such testing station, shall continue to so operate, maintain, supervise, and control said station through said traffic safety council."
Section 5018.12 of the Code provides that all ordinances, rules and regulations which may have been or which may be hereafter enacted in pursuance of the above enumerated powers shall remain in full force and effect. *Page 1252 
Nowhere in any of these sections will be found a specific delegation by the legislature authorizing the Traffic Safety Council to handle and expend funds belonging to the City contrary to the provisions of the budget law set up for the handling of municipal funds and taxation. Throughout all of these statutes of the Code the reference is to cities and towns. There is nothing in the statute that says that the Traffic Safety Council shall be granted unlimited powers for the collection and handling of the money separate and distinct from the council. There is no exception or authorization, as we read the statutes, granting to the Traffic Safety Council the right to handle funds belonging to the City of Des Moines in any other manner than that prescribed by law. The legislature of the State of Iowa has set up certain statutory enactments to protect the manner in which the finances of a city are handled. Chapter 24, Code of Iowa, 1939, known as the Local Budget Law, section 370 of the same is as follows:
"370 Requirements of local budget. No municipality shall certify or levy in any year any tax on property subject to taxation unless and until the following estimates have been made, filed, and considered, as hereinafter provided:
"1. The amount of income thereof for the several funds from sources other than taxation.
"The estimate of such total income other than taxation, for cities over seventy-five thousand population, shall be computed as follows in each fund; the estimate of that portion of this income which is derived from licenses, fees, fines and other miscellaneous items of income other than taxes, shall be no larger than the actual collection of these different items of income, but not including transfers from other funds, during the preceding twelve months ending June 30. Also, to such total estimate, may be added any new source of income other than taxes but only after it shall actually have been authorized by the city council and such estimate of this new source of income must be reasonable.
"2. The amount proposed to be raised by taxation.
"In cities over seventy-five thousand population, the amount proposed to be raised by taxation may be five and twenty-seven *Page 1253 
hundredths percent larger than the amount proposed to be expended as provided in subsection three after deducting balances from the preceding year if any, and income from sources other than taxation. Nothing herein shall be construed as permitting a tax levy in excess of the millage rates elsewhere provided.
"3. The amount proposed to be expended in each and every fund and for each and every general purpose during the fiscal year next ensuing.
"4. A comparison of such amounts so proposed to be expended with the amounts expended for like purposes for the two preceding years."
Under the local budget law, it is the mandatory duty of the municipality to show the amount to be collected from sources other than taxation. Next from the amount to be collected by taxation, there shall be deducted from income monies received from sources other than taxation. The purpose of this statute is that the taxpayer shall pay less money by virtue of the fact that income other than taxation shall be deducted. It is undisputed in this record that in arriving at the budget ordinance, no consideration whatsoever was given to the income of the testing station. The statute is mandatory that all such income shall be listed and the statute further provides that the levy shall not be certified until the estimates have been filed and considered.
Section 371 of the 1939 Code provides that the estimates shall be filed a sufficient time in advance to permit discussion and consideration.
Section 372, the estimates must be itemized.
Section 375 of the Code provides that the board shall fix a date for hearing and that publication of the notice of the time of the hearing shall be made in the official newspaper.
Section 377 provides that the certifying board shall meet at the time and place designated in said notice, at which meeting any person who would be subject to such tax levy shall be heard in favor or against the same.
Section 390.1 provides for an appeal. And so we find that the legislature of Iowa has prescribed the way in which cities *Page 1254 
such as the City of Des Moines shall set up a budget of the amount of taxes necessary for the ensuing year. The statute setting up the Traffic Safety Council does not exempt the inclusion of the funds received from the testing station from being listed in the budget of the City. The statute does not say so nor can it be inferred from the language. The taxpayers have a right under the law to have the funds which are received by the Traffic Safety Council handled in the same manner as in which all other funds of the City are handled except those specifically provided by the statutes to be handled in a different manner. Here are large sums of money handled separate from the city funds, not taken into consideration in arriving at the amount of the budget, deposited in a separate bank, disbursed not on order of the city treasurer. The budget law gives to the taxpayer the right to know in advance the amount of money that the City is going to ask to be levied as taxes, the purpose for which the funds are to be expended. It requires of the City that notice of the hearing be given. The taxpayer may be there present and object to certain items. If the objection is overruled, he has a right of appeal. It is the taxpayer who is going to pay the bill. It is his money that the City is going to expend and the legislature of Iowa, rightly so, we believe, has given to the taxpayer certain rights and has required of cities that the funds of the taxpayers be handled in a certain way. In the case at bar no criticism is raised in regard to the manner in which the Traffic Safety Council in the City of Des Moines has operated. It has been composed of public-spirited citizens who have carried on in the interest of the people of Des Moines but the requirements of the statutes are mandatory and until the legislature of this state changes the manner by proper enactment, this court will not and cannot interfere with the plain provisions of the law. We believe the lower court was right in holding that it is the duty of the City of Des Moines to take over the funds of the Traffic Safety Council and that same be handled as by statute provided. Some other questions are raised, all of which have been considered. Finding no error, the case is, and it must be, affirmed. — Affirmed.
MILLER, C.J., and OLIVER, GARFIELD, HALE, SAGER, WENNERSTRUM, and STIGER, JJ., concur. *Page 1255