## BROWN *v.* GRANT & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF COLORADO.

Argued December 14, 15, 1885.—Decided January 4, 1886.

A statute of the Territory of Colorado authorized a board of managers to receive a conveyance of a site in Denver for the Capitol of the Territory. A., by warranty deed, conveyed a tract for such site to the board "for the purpose of erecting a capitol and other buildings thereon only." The Territory made no use of the tract before the admission of Colorado as a State. After its admission, A. executed and put on record a deed annulling the gift, and took possession of the tract, and was in possession when he brought this suit. The bill set forth these facts, alleged that the board was about to take possession of the tract for the purpose of erecting buildings thereon, and prayed an injunction. All parties to the suit were citizens of Colorado. *Held,* That if the facts raised any Federal question, they did not show that A. was about to be deprived of his property without just compensation.

This was an appeal from the final decree of the Circuit Court of the United States for the District of Colorado, dismissing, upon demurrer to the bill, a suit in equity instituted in that court by Henry C. Brown against James B. Grant, Governor, William H. Meyers, Lieutenant-Governor, Melvin Edwards, Secretary of State, and D. F. Urmy, Attorney-General of the State of Colorado, and against certain other persons constituting a Board of Managers for the erection of the capitol building for that State.

The case made by the bill was substantially as follows:

By the third section of an act of the Council and House of Representatives of the Territory of Colorado, entitled "An act to locate the seat of government of the Territory of Colorado," approved December 9, 1867, it was, among other things, provided that:

"SEC. 3. The persons appointed, as aforesaid, in section second of this act, shall, within sixty days after the date of their appointment, proceed to select a site for the capitol of said Territory, within the said city of Denver, which site shall contain not less than ten acres of land, and if the site so

selected shall be conveyed to the Territory of Colorado by the person or persons holding the title thereto, without charge to said Territory, and so as to vest the title to the same, absolutely and in fee simple, in said Territory, the site so selected shall be and remain the property of said Territory, for the purpose of erecting a capitol and other public buildings thereon."

On the 11th of January, 1868, the plaintiff, by deed duly acknowledged, conveyed to the Territory a tract of ten acres of land, part of a larger tract owned by him in the immediate vicinity of Denver. The consideration is stated to be one thousand dollars paid to the grantor by the Territory, but the land was, in fact, donated by him in the belief that the erection thereon of the capitol and other public buildings would enhance the value of his adjoining lands. The deed contained the following recitals:

"The said land being so conveyed to said Territory in pursuance of the act entitled ' An Act to locate the seat of government of the Territory of Colorado, approved the 9th day of December, A.D. 1867,' so as to vest the title to the same absolutely and in fee simple in said Territory, for the purpose of erecting a capitol and other public buildings thereon only ; to have and to hold the same, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title, interest, and claim whatever of the said party of the first part, either in law or equity, to the only proper use, benefit, and behoof of the said party of the second part, its successors and assigns forever.

" And the said party of the first part, the aforesaid parcel of land unto the said party of the second part, its successors and assigns, against the claim or claims of all and every person whatsoever, he, the said Henry C. Brown, does and will warrant and forever defend by these presents."

Contemporaneously with the execution of the deed, the legislative assembly of the Territory adopted a memorial to Congress, asking, for reasons therein stated, a liberal appropriation for the erection of suitable capitol buildings for the use of the Territory. By an act of the Territorial legislature, approved February 9, 1872, it was directed that proposals be

received for the erection of a capitol building, and that it "be erected upon the ground heretofore donated to the Territory for that purpose by Henry C. Brown." On the same day another memorial to Congress was adopted asking an appropriation of $100,000, collected from internal revenue taxes within the Territory, for the purpose of assisting in the erection of a capitol building at the seat of government of the Territory. Thereafter, on the 13th of February, 1874, another act was passed providing for the appointment of capitol commissioners, with authority to have the custody of, and to expend in the improvement of the capitol grounds, and in the erection of capitol buildings thereon, money appropriated or donated for that purpose; to sell all lands and lots donated for capitol purposes, except the capitol site; the money so raised to be used in the erection of a capitol building or buildings, to be completed, paid for, and delivered to the Territory on or before January 1, 1876.

The bill alleged that the Territory of Colorado did, on or about the 1st day of August, 1876, "depart this life," and on the same day, "by proclamation of U. S. Grant, the then President of the United States of America, the State of Colorado was admitted into the Union," the "said Territory never having during its life occupied or made use of said tract of land donated to it by your orator, either for the purpose of erecting capitol or other public buildings thereon, or for any other purpose whatsoever."

The Constitution adopted by the people of Colorado under the Enabling Act of Congress provided that the general assembly should not change or locate the seat of government of the State, but at its first session, subsequent to the year 1880, should submit the question of its permanent location to the popular vote at a general election, until which vote no expenditure for capitol buildings should be made. The same Constitution provided "that all property, real and personal, belonging to the Territory of Colorado at the adoption of this Constitution shall be vested in and become the property of the State of Colorado."

On the 9th of May, 1879, the plaintiff took possession of the

ten-acre tract and constructed around it a substantial board fence. At the same time he executed and put on record a deed revoking and annulling his conveyance of 1868. The reason assigned in that deed for its execution is, that "neither the said Territory, nor its successor, the State of Colorado, have ever accepted the said conveyance, or located or erected a capitol or other public buildings on said tract of land as in and by said deed [of 1868] provided."

The bill alleged that plaintiff had been in complete possession of said land ever since May 9, 1879; that, at the general election, in 1881, the seat of government was located, by a popular vote, at Denver; and that her officers of State and Board of Managers for the erection of State Capitol Buildings at Denver, were about to take, and, unless restrained, would take, possession of said ten-acre tract for the purpose of erecting said buildings thereon.

He prayed that they be enjoined from disturbing his possession of the premises until he should receive just compensation therefor.

A demurrer to the bill having been sustained upon the ground that it did not set forth a cause of action, the suit was dismissed.

*Mr. James H. Brown* for appellant.

*Mr. Thornton H. Thomas* for appellees.

Mr. JUSTICE HARLAN delivered the opinion of the court. After stating the facts in the language reported above, he continued:

As all the parties to this suit are citizens of the State of Colorado the Circuit Court was without jurisdiction, unless the suit is one arising under the Constitution or laws of the United States. It is not clear upon what precise ground the plaintiff contends that the suit belongs to that class. We suppose his claim to be that when the Territory became a State, the property he had given to the former became his again; and that the provision in the Constitution of the State, "that all property,

real and personal, belonging to the Territory of Colorado " at the adoption of that instrument " shall be vested in and become the property of the State of Colorado," deprived him of his property without due process of law, that is, it was thereby taken from him, for public use, without just compensation being first made, or in some legal mode secured, to him. Assuming that the suit, upon that basis, arises under the Constitution of the United States, it is difficult to conceive of one in which the question has merit.

Before the execution of the deed of January 11, 1868, the Territorial Legislature had located the seat of government at Denver. It was there when the appellant's gift was made. The gift had direct reference to the Territorial enactment authorizing commissioners to accept a conveyance of not less than ten acres of land, without charge to the Territory, and so as to vest in it an absolute fee simple title. The title was so conveyed by Brown to the Territory, "its successors and assigns forever," for " the purpose of erecting a capitol and other public buildings thereon only." The deed was duly accepted; for, if the act under the authority of which the land was obtained, and the execution and registration of the deed, are not complete proof of such acceptance, surely the act of 1872 requiring the capitol building to be erected " upon the ground heretofore donated to the Territory for that purpose by Henry C. Brown," is ample evidence of that fact. It is idle to say that the Territory never accepted the conveyance. Upon what legal ground, then, can the appellant defend his resumption of possession in 1879 ? His conveyance contained no condition under which he could demand the erection of a capitol building within any specified time, in default of which the property would revert to him. The territorial legislature wisely invested commissioners with authority to accept a conveyance of an absolute fee-simple title, and reserved to itself the determination of all questions concerning the time within which the proposed building should be erected. And it cannot be said, in view of the allegations of the bill, that the Territory did not move as rapidly in creating indebtedness for that purpose as the public necessities permitted or the public interests required.

If it were conceded that the removal of the seat of government from Denver, or the abandonment of this land as the site of capitol buildings, would, under all the circumstances, entitle Brown to claim the property, or compensation therefor, it is sufficient to say that no such state of facts now exists.

But the appellant contends that he made this gift upon the implied condition that the *Territory*, not the State, should erect the public buildings in question. Apart from the fact that the terms of the deed are inconsistent with such a condition, the supposition cannot be indulged for a moment that the plaintiff did not look forward to the time when the Territory would become one of the States of the Union—an event which would necessarily tend to accomplish the very object that he had, as he avows, in making the donation, viz., to increase the value of other lands owned by him, of which the ten acres in question formed a part. The reference in the deeds of 1868 and 1879 to the successors of the Territory is persuasive evidence of the fact that the plaintiff contemplated the organization of its people as a State. Now that the State proposes to construct capitol buildings on the land donated for that very purpose, the plaintiff asks the intervention of a court of equity to prevent her agents from entering upon the premises until he receives compensation for what was in law a donation to the public as an organized body, whether under a territorial government, or as a State. He is not entitled to such aid.

The suggestion that the clause of the Constitution providing that the State is the owner of all the property which the Territory held upon its becoming a State deprived him of his property, is not entitled to serious consideration. Unless otherwise declared by Congress, the title to every species of property owned by a Territory passes to the State upon its admission into the Union. The provision in the State constitution to that effect was only declaratory of what was the law.

*Judgment affirmed.*