# PROVIDENCE COUNTY.

HENRY C. CLARK *et al. vs.* THE CITY OF PROVIDENCE.

A tide basin in the city of Providence was surrounded by land made by filling, and this land had been dedicated to public use as a park. Basin and park had been conveyed to the city by the State. Subsequently the city was authorized by the State to fill the basin, discontinue the park, and sell the lands at pleasure.

*Held,* that a real estate owner whose lands were in the vicinity of the park had no equities entitling him to maintain a bill to enjoin the city from filling the basin and discontinuing the park.

*Held,* further, that a real estate owner whose predecessors in title bounded on the salt water, but whose land was cut off from the water by filling done years ago, the filled land adjoining the water being the property of the State, had no equities entitling him to enjoin the city's filling and discontinuing the park. His damages should have been claimed, if claimable, when he ceased to be a riparian owner.

*Held,* further, that the city should not be enjoined from filling, because citizens alleged that such filling would destroy their rights of fishery and of shore, secured by art. 1, § 17, of the Constitution of the State.

Rights of taking clams and fish are subject to the paramount authority of the General Assembly to regulate, modify,.and to some extent to destroy. In the matter of filling tide flowed lands, the General Assembly has, subject to the Constitution of the State and the Constitution and laws of the United States, the authority both of the English crown and of the English parliament.

BILL IN EQUITY for an injunction.    On petition for a preliminary injunction.

*September* 27, 1888.    PER CURIAM.    This is a suit in equity for an injunction to restrain the defendant, the city of Providence, from filling in part the cove basin in said city and from alienating or diverting the land surrounding said basin, now used as a public park or promenade, to other uses.    The place where the park is was formerly flowed by tide-water.    It was reclaimed by filling, and in A. D. 1870 was conveyed by the State, then claiming title to it, to the city.    It had been previously, and has been ever since used as a park, and it is admitted by the city to have been dedicated to the public as such.    The cove basin is subject to the ebb and flow of the tide.    By an act of the General Assembly, passed at the last May session, Pub. Laws R. I. cap. 722, of May 31, 1888,[1] the city was authorized to fill the basin in part and to dis-

---

[1] As follows :

" SECT. 1.    The city of Providence is authorized to fill or cause to be filled the cove basin in the city of Providence, constructing through the present site of said basin a passage for the Woonasquatucket River, at least one hundred feet wide ; and also a passage for the Moshassuck River, connecting the same with the channel of the Woonasquatucket River, at least forty five feet wide.

" SECT. 2.    The city of Providence may abandon and discontinue as a public park any and all lands known as the cove or cove promenade, and being land surrounding or in part surrounding the cove basin, in said city, and said city of Providence may sell, convey, or exchange any such lands for railroad or other purposes.

" SECT. 3.    To carry into effect the authority and power hereinbefore granted and defray the expense thereof, the city of Providence is authorized to borrow money to an amount not exceeding four hundred and fifty thousand dollars,

continue the park, and to sell, convey, or exchange the land for railroad or other purposes. The object of the complainants is to prevent this.

The bill sets forth three grounds on which the injunction is asked.

*First.* The bill alleges that Timothy Newell, one of the complainants, is and long has been seized of certain lots numbered 20, 21, and 22, on the plat of the Governor Francis land, surveyed and platted August 18, 1855, by N. B. Schubarth, which lots are adjacent to the cove lands; that said Newell has made lasting and valuable improvements on the lots, and that they will be rendered of less value by a conversion of the park land to other uses; that by being an adjoining proprietor he has a vested interest in said park land, and that the same is threatened with destruction by the act of the General Assembly. The statements of the bill carry the impression that the lots border on the cove lands, or bordered on the cove before the lands were made by filling. The evidence shows that they are simply near, without bordering on said lands, and that the advantages which accrue to them from having said lands remain a park are merely advantages of proximity. The complainant, Newell, claims on account of them a vested interest in the park, but adduces no authority in support of the claim. We do not see how he thereby acquires a vested interest any more than he would acquire such an interest in a neighboring private garden or grove, which might add value to the lots by making them pleasanter as a place of residence. It was long ago decided that a land owner has no vested right in a mere prospect, though it may greatly add to his enjoyment. *Aldred's case*, 9 Rep. 57 *b*, 58 *b*. In *The Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234, it was expressly decided that the owners of land around a public park have no such right or interest therein as will entitle them to compensation, when a city, being the owner of the fee of the park, discontinues it under the

and to issue its bonds therefor at such times, and on such conditions, and in such amounts, not exceeding said sum, as the city may determine, and to establish a sinking fund therefor.

" Sect. 4. This act shall go into effect from and after its passage, and all acts inconsistent herewith are hereby repealed."

sanction of the legislature. The case is directly in point. See, also, *State* v. *Dexter*, 10 R. I. 341, 346, 347.

The complainants also contend, though the point was not presented in the bill, that the General Assembly has no power as against the public to authorize the discontinuance of the park and the sale of the park lands, and cite *City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540 ; *Warren* v. *The Mayor of Lyons City*, 22 Iowa, 351; *Le Clercq et al.* v. *Trustees of the Town of Gallipolis*, 7 Ohio, 217. But in these cases the fee of the land which was subject to the public easement of the park was not in the city or town which was authorized to discontinue and sell as absolute owner, but was in individual proprietors, or if in the cities or towns, was in them as trustees under a special trust for the public. The case of *The Brooklyn Park Commissioners* v. *Armstrong*, above cited, is more exactly in point ; for in that case the land on which the park was laid out belonged absolutely to the city, and the court held that though the city could not of itself alienate the land in contravention of the public right, it could do so if authorized by the legislature. In such a case the state is, as to the public right, the representative of the public, and as such has power to release the right. *State* v. *Dexter, supra ; Gerhard* v. *Bridge Commissioners*, 15 R. I. 334.

*Second.* The complainants ask an injunction, because they are citizens and residents of the city of Providence, and as such entitled to enjoy and freely exercise all the rights of fishery and privileges of the shore to which the people of the State have been heretofore entitled under the charter and usages of the State, and because the cove basin being covered by tide water, an act of the General Assembly authorizing the filling, or partial filling of it, is in derogation of these rights and privileges and in conflict with the Constitution, article 1, section 17. This section reads as follows : " The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore to which they have been heretofore entitled under the charter and usages of this State. But no new right is intended to be granted, nor any existing right impaired, by this declaration." It is clear that this section leaves the rights of the people as they existed previously to the Constitution. It neither diminishes nor adds to them as was

decided by this court in *State* v. *Medbury*, 3 R. I. 138. It is necessary, therefore, to know what the rights and privileges of the people were under the charter and usages of this State before the Constitution was adopted, in order to decide whether they are infringed by the act of the General Assembly.

The act must be taken to be constitutional unless the contrary appears : for in our opinion the General Assembly has in this matter the authority, not simply of the English crown, but of both crown and parliament, except so far as it has been limited by the Constitution of the State, or by the Constitution and laws of the United States. *Gould* v. *Hudson River R. R. Co.* 6 N. Y. 522 ; *The King* v. *Montague*, 4 B. & C. 598. There is little in the Rhode Island Reports to enlighten us on this point. In *State* v. *Medbury*, 3 R. I. 138, the court held that the provision of the colonial charter, in regard to fisheries, does not relate to the shell fisheries of the State, but was designed to continue to the people of New England the right more especially to prosecute the cod fishery in Rhode Island waters, as they had been accustomed to prosecute it before the charter was granted. In *State* v. *Cozzens*, 2 R. I. 561, the court held that the General Assembly has power to lease portions of the tide-waters of the State for private oyster fisheries to the complete exclusion, for the exercise of the shell fisheries thereon, of all but the lessees, even though the leases include portions of natural oyster and quahaug grounds, notwithstanding said section 17. Neither of these decisions give any support to the claim of the complainants, but, so far as they bear, are adverse to it. It is common knowledge that the citizens of the State have always been accustomed to dig clams freely along the shores of the bay and river wherever they could be found, and, subject to some legislative regulations, to fish in the deeper waters ; and because this has been so, and because formerly citizens were accustomed to clam and fish in the cove, the complainants take it for granted that they are entitled, under section 17, to clam and fish there in the same manner forever, and that therefore any act of the General Assembly which authorizes the filling, or partial filling of the cove, thus lessening their ability to do so, must be unconstitutional and void. But it is also common knowledge that there are many places where fish and clams were formerly taken

which are now solid land made by filling out the shores, either with the tacit acquiescence or with the implied or express consent of the General Assembly. The acts of the General Assembly establishing, or authorizing the establishing, of harbor lines, some of which existed before the Constitution, Digest of 1822, pp. 484, 485, go to show that the assumption of the complainants is too broad, and that these rights of clamming and fishing are enjoyed in subordination to the paramount authority of the General Assembly to regulate and modify, and, to some extent at least, to extinguish them. The counsel for the complainants, in view of these acts, concedes that the General Assembly has power to authorize encroachments upon the tide-waters, where they are made in the interests of navigation, for the erection of wharves, or are effected for other public purposes. But there is nothing in the acts, so far as we are aware, imposing any such limit, and it is well known, as a matter of fact, that no such limit has been observed. Moreover, in the case at bar, the evidence introduced by the complainants, while it shows that citizens did many years ago fish and clam in the cove, does not show that any such fisheries now exist there, and, considering the extensive changes which are shown to have been made, it is inferable that such fisheries, if they have not wholly ceased to exist, have at least ceased to have any substantial value, and, indeed, some of the affidavits imply as much ; so that, really, the second ground on which the injunction is asked does not rest so much on any existing fact as on a fact which it is supposed the court will treat as existing, because it formerly existed. We are not satisfied that the second ground is tenable either in law or fact.

*Third.* It appears that Charles Sabin, one of the complainants, is owner of a lot of land on the north side of Westminster Street, which, when conveyed to his predecessors in title, in 1756, bounded northerly on the cove, and that the easterly and westerly lines of the lot extended northward would enter the cove basin. The said Sabin claims that, by reason thereof, he is entitled to the rights of a riparian proprietor in the cove basin, and that, inasmuch as the act for filling the basin does not provide compensation for taking those rights, he is entitled to have the filling enjoined. The lot, however, as now used by Sabin does not ex-

tend to the cove basin, but between it and the basin there is a wide space, used partly as a public square or street, partly as a railway depot, and partly also as a portion of the park or promenade surrounding the basin. The portion of this land nearest to said basin, including said park, was filled out by the Providence & Worcester Railroad Company, under the authority of a special act of the General Assembly, which reserved to the State all its rights in the land so filled, which should not be appropriated to the railroad company. Under this reservation the title to at least the rim of land around the cove basin remained in the State after it was filled, said land never having been appropriated to the railroad company, and the owner of the Sabin lot ceased to be a riparian proprietor. The riparian rights appurtenant to the lot, if they had not previously been extinguished, were then taken away, and the owner, if entitled to compensation for them, should have claimed it then. We do not think that at this late day they afford any ground, if ever they did afford any ground, for the equitable interference of the court.

The counsel for the complainants contends that the title to the land in the cove basin never passed to the city, but still remains in the State. We do not appreciate the significance of this point; for admitting that the title remains in the State, the General Assembly has authorized the filling, and we have no right to forbid what the General Assembly has authorized, if the act conferring the authority be valid. *Petition denied.*

*Thomas A. Jenckes & Walter H. Barney,* for complainants.
*Nicholas Van Slyck,* City Solicitor, for respondent.

See *Mowry* v. *The City of Providence, infra.*