CELIA CARSON, Appellant, v. STATE OF IOWA, Appellee.

No. 47431.

(Reported in 38 N. W. 2d 168)

JUNE 14, 1949.

REHEARING DENIED SEPTEMBER 23, 1949.

Ries, Dutcher & Osmundson, of Iowa City, for appellant.

Robert L. Larson, Attorney General, Oscar Strauss, Assistant Attorney General, and Arthur O. Leff, of Iowa City, for appellee.

SMITH, J.—There is little if any conflict·in the evidence. The plot of ground in dispute is located in the heart of Iowa City adjacent to its business district. Its history in this record goes back to March 3, 1839, when Congress appropriated a section of land for the seat of government of the Territory of Iowa, 5 U. S. Stat. at L., chapter 77, page 330.

Thereafter the Territorial Legislature ("Council and House of Representatives") designated commissioners to select the site and pursuant thereto they prepared and certified a plat on July 12, 1839, of Section 10, Township 79 North, Range 6, West of Fifth P.M., in Johnson County. The certificate recites "all streets, alleys, squares, reservations and landings are as designated on the plat, are for the public use and are to remain as such." The plot involved here is one of the areas designated "park." It is a square block bounded by Dubuque, Jefferson

and Linn Streets on the west, north and east, respectively, and Iowa Avenue on the south, in Iowa City.

The evidence indicates that as early as 1842 and even before any de jure municipal government was formed, the "park" was to some extent used as the site of public exercises for Fourth of July celebrations and later for. other public and semipublic purposes—a Union Sabbath School celebration in 1860, a series of band concerts in 1867 and in 1884, weekly concerts by the University Band. The showing is understandably weak and unsatisfactory and much of the evidence, composed principally of old newspaper articles and records of municipal council proceedings, was received subject to objection. It is supplemented however by some oral testimony of witnesses whose memories go back of the year 1890. They say the park was used for political speeches and various recreational purposes, that it had park benches and tables and a bandstand, hitching racks in the street around the edge and a lumber sidewalk running through it.

As there was no municipal corporation existent when the plat was filed there was of course no formal acceptance. But that the town (later city) treated the block of ground as a park seems clearly established. When the actual occupation of the platted area commenced is not shown. Iowa Territory became a State with Iowa City as its capital in 1846. The seat of State government was however removed to Des Moines in 1855. Chapter 72, Acts of Fifth General Assembly. The State University was established at Iowa City in 1847. Chapter 125, Acts of First General Assembly.

On January 15, 1841, the Territorial Legislature passed an "Act to Incorporate Iowa City" as a *town* with power through its "president and trustees" to acquire property for its use and "to sell and convey the same." Chapter 89, Laws of 1841, page 97. This act was "revived" in 1842 (chapter 31, Laws of 1842) and again in 1844 (chapter 138, Laws of 1844). The last cited act provided for an election on its adoption. In 1853 the state legislature incorporated Iowa City as a *city* (chapter 63, Acts of Fourth General Assembly) and provided for an election to be called by "the trustees of Iowa City township" to vote on its acceptance—"for the charter, or against the charter." Section 45. The record does not give the result of the vote in either

the 1844 or the 1853 election, but the municipal status is not in issue.

The events complained of in this suit occurred in the year 1890. On March 7 of that year the city council passed an ordinance purporting to grant the use of this "park" to the State for the use and benefit of the State University of Iowa, "to be used * * * for the purpose of erecting thereon additional buildings * * *." The same ordinance also purported to vacate "all that part of Linn Street located between Iowa Avenue and Jefferson Street" and to grant it to the State "to be used in connection with the park hereinbefore granted."

On April 12, 1890, the legislature enacted that said ordinance be "legalized and confirmed, and the same made effectual and valid"; also that the grant in said ordinance "be and the same is hereby accepted * * * for the use and benefit of the State University of Iowa." Chapter 128, sections 1, 2, Acts of Twenty-third General Assembly.

Plaintiff, on appeal, argues eight propositions: A dedicated park is a special kind of trust property not subject to alienation by either city or State; the attempted alienation and diversion were unconstitutional, illegal and void; the public's right in the park cannot be lost by estoppel; nor by apathy; nor by reason of use, improvement or expenditure of money by the State; one State institution or agency cannot acquire rights or interests against another State agency to the detriment of the general public; the uses of the park by the State since 1890 have not exclusively denied the interests and rights of the public to the use of the park; and the State would suffer no material or substantial damage by restoration of the park to its original use.

The defendant contends for the legality and constitutionality of the acts complained of; asserts equitable estoppel; claims the equities of the situation are against plaintiff; denies the tract was ever dedicated or accepted as a park or that plaintiff ever acquired any rights therein; urges the statute of limitations; and argues the action cannot be maintained against the State.

The trial court held that the State had waived its immunity from suit; that the park had been legally dedicated to the public as a park and accepted as such; that the purported

grant to the State was void and unconstitutional; that the statute of limitations did not apply; but that the public by apathy was estopped to claim the right to use the park. The court dismissed plaintiff's petition on the last named ground but rejected defendant's other contentions. Plaintiff appeals. Defendant also appeals but only for the purpose of protecting the decree in its favor. The appeal was unnecessary for that purpose. See McMinimee v. McMinimee, 238 Iowa 1286, 1294, 30 N. W. 2d 106, 110; 2 Iowa Digest, Appeal and Error, Key No. 878(4).

We think the importance of the case and of the questions raised requires a determination by us of more than would be absolutely necessary to a mere affirmance of the trial court's decree. The questions are ably argued on both sides but we shall not try to follow closely the order of presentation by either.

I. We are confronted at the outset by the somewhat anomalous situation of an apparent conflict of interest between two strictly public uses—one represented here by the State and the other by a citizen, resident and taxpayer of Iowa City, who brings the suit on behalf "of herself and others similarly situated constituting a class of persons having a common interest in the rights claimed." It is apparent that by this description she means the general public and not a class of persons having any special interest in the subject matter.

It is not a suit by a dedicator (or one claiming under him) to prevent violation of the contract by which the public acquired use of the property; or by one who claims she (or those through whom she derives title) acquired same in reliance upon the continued existence of the park.

Nor is it a suit by the municipality, on relation of a citizen-taxpayer, against officials claimed to be violating or threatening to violate the law and the rights of the public. Plaintiff's interest and that of every other member of the class she assumes to represent is after all only general. No special or peculiar interest is pleaded or shown.

The State (and the municipality as an agency of the State) ordinarily represent the public interest. City of Hart-

ford v. Maslen, 76 Conn. 599, 57 A. 740, 744. If municipal and State officials act illegally they are the ones to be restrained at the suit of the State or city, either directly or on relation of a proper person. Their acts, if void, are not the acts of either State or municipality. We cannot hold that a *class suit* can properly be maintained against either State or municipality to protect *public* rights, unless the "class" be of individuals with such special interest as to permit individual suits. The class can have no right of action that may not be maintained by an individual member thereof. No individual citizen may sue to restrain a public nuisance or a claimed illegal act by public officials unless he can show some special personal or private interest or damage apart from that of the public generally. No claim is made that this is a taxpayer's suit to restrain threatened acts affecting taxes.

It may be thought or urged however that the practical situation is the same as if the suit had been brought by a relator (representing the public interest) to restrain threatened illegal action by public officials. As already intimated the issues are important and should not be disposed of (temporarily, perhaps) on procedural grounds alone. The title of the University should be adjudicated. We shall therefore inquire as to the merits of the issues.

II. What we have said practically disposes of one defense urged by both special appearance and answer, viz., State immunity from suit. If the case is not really against the State but against officials threatening illegal action, no question of immunity can be involved. Plaintiff contended and the trial court held that immunity was waived because of section 613.8, Code of 1946. The contention is of doubtful merit, but unnecessary in view of our election to consider the merits of the case as indicated above.

III. We come to the most important question: whether the city could, with legislative approval, divert the use of the area from public park to State university purposes. Plaintiff argues there is something peculiarly sacred and permanent about a dedicated public park and that the attempted alienation or diversion was unconstitutional, illegal and void.

There is authority in our own decisions to support this general proposition, at least where *private* property has by its owner been dedicated to public use and accepted by the public for the purpose specified in the dedication. It is based upon the theory of a contract between dedicator and public, which is binding on both parties. Warren v. Mayor of Lyons City, 22 Iowa 351. We do not question the soundness of the proposition as limited to such dedication of private property. Undoubtedly in such case the dedicator, or one claiming under him, can maintain suit to prevent diversion in violation of the contract dedication.

But we have here a quite different case. This ground was never privately owned. It was not dedicated to public use but designated by public authority to a specific public purpose. On March 3, 1839, it was owned by the United States and situated in the Territory of Iowa.

The Act of Congress "appropriated and granted" the entire section to the Territory "for the purpose of erecting thereon the public buildings for the use of the Executive and Legislative departments of the Government of the said Territory." 5 U. S. Stat. at L., chapter 77, section 1. The Act provided that "nothing herein expressed shall be construed to restrain the said Territory of Iowa, after appropriating a sufficient quantity of land * * * for the site and accommodation of the public buildings, from selling and disposing of the residue * * * in lots or otherwise, for the use of said Territory, in the erection and completion of said buildings." Id., section 2.

The entire section thus became property of the Territory and was no longer a part of the public lands of the United States. 50 C. J., Public Lands, section 1, page 886. The Territorial Legislature on January 21, 1839, provided that the Governor, by proclamation, should direct a sale of lots. Laws of Iowa, 1838-39, page 437. Provision was made for the sale of private lots and execution of deeds therefor by a territorial agent. Laws of Iowa, 1840-41, chapters 8, 9, 142.

We need not determine whether technically the legal title of the streets and other public grounds passed to the municipality. There was a territorial statute then in force, similar to our present Code section 409.13, providing that the certifying,

acknowledging and recording of a town plat "shall be deemed in law, and in equity, a sufficient conveyance, to vest the fee simple [title] of all such parcel, or parcels of land, as are therein expressed, and shall be considered, to all intents and purposes, a general warranty against such donor * * * for the uses and purposes therein named * * *" and that such title "shall be held, in the corporate name thereof, in trust to, and for, the uses, and purposes, set forth * * *." Laws of 1838-39, page 485.

We are unable to see that it makes any difference whether such a statute would apply to an allocation of public lands to some special public use. If it be considered that the legal title passed from the Territory to the municipality, the former retained only the legislative control which the sovereign has over all municipal governments. Such power of control doubtless passed to the State when Iowa attained statehood. 59 C. J., States, section 35, page 69, and authorities cited.

If on the other hand the legal title did not pass, the ownership of the whole platted area (except private lots sold before statehood) remained in the Territory and passed to the State. 49 Am. Jur., States, Territories, and Dependencies, section 10 (note 17, page 231) citing Brown v. Grant, 116 U. S. 207, 6 S. Ct. 357, 29 L. Ed. 598. In the Brown case it appeared the Constitution of the State of Colorado provided "that all property of the Territory of Colorado shall be vested in and become the property of the State of Colorado." The supreme court said at page 212 of 116 U. S., page 360 of 6 S. Ct., page 600 of 29 L. Ed.:

"Unless otherwise declared by Congress, the title to every species of property owned by a Territory passes to the State upon its admission into the Union. The provision in the State constitution to that effect was only declaratory of what was the law."

In 59 C. J., States, section 35, supra, it is said:

"Upon the admission of a territory into the Union as a state the state government succeeds to all the powers of sovereignty previously enjoyed by congress and which belong to the

original states, and only such powers in respect to the people of the new state remain in the federal government as, under the constitution, it may exercise over the original states."

Under either hypothesis therefore the control of the park was in the city, subject to legislative supervision. We have repeatedly held that since municipalities are creatures of the legislature its control over them is almost unlimited. State v. Manning, 220 Iowa 525, 536, 259 N. W. 213; Eckerson v. City of Des Moines, 137 Iowa 452, 465, 115 N. W. 177; City of Clinton v. Cedar Rapids and Missouri River R. Co., 24 Iowa 455, 458, et seq. No rights are claimed to have arisen by reason of reliance of any property owner upon the continued existence of the park.

IV. Notwithstanding many judicial statements (many of them dicta) lending some support to plaintiff's contention here, we think the general public had no right of use in this park that could not be diverted by the city with legislative approval. The distinction between dedications made by private owners of property to public use and the appropriation of publicly owned ground to some specific public purpose is logical and supported by authority, both judicial and textbook. See Pettitt v. Mayor and Council of Macon, 95 Ga. 645, 649, 23 S. E. 198, 200.

In Harter v. City of San Jose, 141 Cal. 659, 665, 75 P. 344, 346, the opinion quotes Dillon on Municipal Corporations, Fourth Ed., section 651, as follows:

" 'As between the municipality and the general public, the legislative power is, in the absence of special constitutional restrictions, supreme, and so it is in all cases where there are no private rights involved. If the municipal corporation holds the full title to the ground for public uses, without restriction, the legislature may, doubtless, direct and regulate the purposes for which the public may use it.' "

See also 39 Am. Jur., Parks, Squares, and Playgrounds, section 21, referring to an annotation in 18 A. L. R. 1247, which says, citing the Harter case, supra, and others:

"A different construction is placed upon dedications made by individuals from those made by the public. The former are

construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted."

In Wright v. Walcott, 238 Mass. 432, 435, 131 N. E. 291, 292, 18 A. L. R. 1242, to which the foregoing is an annotation, it is held where the land is acquired by eminent domain or through expenditure of public funds and is "not subject to the terms of any gift, devise, grant, bequest or other trust or condition," it may be devoted to some other public use by legislative mandate. See Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70; Clarke v. City of Providence, 16 R. I. 337, 15 A. 763, 1 L. R. A. 725; City of Hartford v. Maslen, 76 Conn. 599, 57 A. 740.

The rule is repeatedly stated by McQuillin that property devoted to public use, such as parks, cannot be alienated or diverted *without legislative authority.* 3 McQuillin on Municipal Corporations, Second Ed. Revised, sections 1242, 1243, 1255 (pages 1024, 1028, 1056). The Third Edition of McQuillin, volume 2, page 200, broadly states: "It is generally held that the legislature may authorize the discontinuance of parks and sale of park property, the fee of which is in the city, when no private property is thereby taken."

Some of our own decisions are cited by plaintiff: Ransom v. Boal, 29 Iowa 68, 70, 4 Am. Rep. 195, 196, concerned another Iowa City park created by the same plat as is involved here. That opinion merely held the park could not be sold under execution on a judgment against the city, because it was not owned by the city. The statement in the opinion (relied on by plaintiffs here) to the effect that the legislature could not authorize "an appropriation of the property to any other than the trust purposes" was in the nature of dictum. It cites Warren v. Mayor of Lyons City, supra (22 Iowa 351), which, as we have already pointed out, involved a contract between a private dedicator and the city and was brought by one of the original dedicators.

Another Iowa case cited by plaintiff is Cook v. City of Burlington, 30 Iowa 94, 98, 6 Am. Rep. 649, 651. The opinion referring to a United States grant somewhat analogous to the one here, says: "The use was dedicated to the public. The act

of congress making this dedication was in the nature of a contract which could not afterward be abrogated or repealed." Two of the three cases cited in support of this pronouncement involved dedications of private property, the third was clearly not in point. It seems apparent the quoted language referred, not to a contract between the dedicator and the public, but to the obligation growing out of the fact urged by plaintiffs that they had purchased their property in reliance on the grant which gave it special value.

Brockman v. City of Creston, 79 Iowa 587, 44 N. W. 822, was a taxpayer's suit brought to enjoin threatened action that might affect plaintiff's taxes, as it was proposed to donate city owned property to the county for a courthouse as an inducement to make defendant its county seat. It is not in point here.

Davenport v. Buffington, 8 Cir., 97 F. 234, 238, 239, 46 L. R. A. 377, 380, 381, involved a legislative grant or dedication by the Cherokee Nation in Oklahoma. After the municipality (Town of Downingville) had held possession for twenty-three years and had levied taxes for the care and improvement of the park, the Cherokee Nation sought to withdraw it from public use and sell it in lots for private use.

The court of appeals upheld the injunction granted by the trial court, first distinguishing Clarke v. City of Providence, 16 R. I. 337, 15 A. 763, 1 L. R. A. 725, and Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70, being cases *where the diversion was only to other public uses.* The opinion then seems to ignore that distinction and places its decision upon the sweeping generalization that:

"Nations, states, and municipalities have and exercise two classes of powers,—one governmental, by which they rule their people; the other proprietary or business, by which they carry on their business affairs as legal personalities. The same fundamental principles of justice, of law, and of equity govern them in the exercise of their powers of the latter class which control the acts of private individuals."

The opinion couples with this statement however the further point that lots had been sold and money raised by taxation

for the improvement of the park in reliance upon the "grant and covenant which the dedication evidences."

We have gone into this case of Davenport v. Buffington at some length because it contains perhaps as strong language as can be found against the distinction we adopt between dedication of private property to public use and allocation of property already publicly owned to some particular public purpose. Its broad statement is weakened, however, by the emphasis placed on facts tending to show reliance by taxpayers and property owners upon the continued existence of the park and the fact that it was proposed to withdraw the park completely from public use, and not merely divert the use to another public one.

■ With full realization of the fact that there are judicial pronouncements to the contrary we hold that where land, already publicly owned, is designated for some particular public use no contractual trust arises in favor of the general public that precludes subsequent diversion of it by proper legislative authority to some other and different public use; at least, where no special private rights have in the meantime arisen by purchase or improvement of adjacent property in reliance on the permanency of the public use in question.

The proposition is in principle recognized in various cases. See Sharp v. City of Guthrie, 49 Okla. 213, 152 P. 403 (withdrawing opinion in 145 P. 764); Seattle Land & Improvement Co. v. City of Seattle, 37 Wash. 274, 79 P. 780; Morgan v. Rogers, 8 Cir., Colo., 79 F. 577 (affirmed Wright v. Morgan, 191 U. S. 55, 24 S. Ct. 6, 48 L. Ed. 89); Owen v. City of Tulsa, 27 Okla. 264, 111 P. 320.

We apprehend the principle holds good however the original public ownership arose, whether by purchase, condemnation or grant (as here) from the public domain.

V. It is seriously argued the city ordinance of March 7, 1890, granting the use of the park to the State for university purposes was without legislative authority. Ever since enactment of the Laws of 1864 there has been statutory authority permitting municipalities not only to acquire and lay out but also to vacate streets, alleys and other public grounds and dispose of same whenever such lands are deemed unsuitable for the

purpose for which they were originally granted. Chapter 127, Laws of 1864; section 470, Code of 1873; section 883, Code of 1897.

This is not materially different from a grant of discretion to act when it is in the public interest. We cannot, on this record, question its exercise by the city council. The transaction constituted a technical diversion from one public purpose to another. Whether circumstances had rendered the site unsuitable for a public park was for the municipality to say. Its determination in the absence of some showing of fraud, arbitrary action or abuse of power is not subject to judicial review. 2 McQuillin on Municipal Corporations, Third Ed., section 10.33. See also cases cited 14 Iowa Digest, Municipal Corporations, Key No. 63.

VI. Various constitutional criticisms are leveled at chapter 128, Laws of Twenty-third General Assembly, the act which purported to legalize the ordinance in question and to accept the grant made therein for the use of the state university.

Article I, section 10, of the Constitution of the United States, and Article I, section 21, of the Constitution of Iowa, are invoked on the theory that the original designation of the property as a public park constituted a contract which could not be impaired. We have already stated our views upon the "contract" theory and shall not repeat here the considerations upon which they are based. We do not believe there was any contract here within the meaning of those constitutional provisions against impairment of contracts.

Most stress is laid upon the claimed violation of Article III, section 30, of the Constitution of Iowa forbidding passing of local or special laws in certain specified cases. We have already indicated that the city had power under general law to pass the ordinance diverting the property from park to state university purposes. No "legalizing act" was necessary. The act, however, accepted the tendered grant for the use and benefit of the university and was proper for that purpose.

But we think the plaintiff's argument at this point is unsound for another reason. She contends the legislative act in question (chapter 128, supra) was unconstitutional as a curative

act because the general assembly could not, as an original question, have authorized, by a general law, the diversion complained of, citing Cook v. Hannah, 230 Iowa 249, 297 N. W. 262.

 We have already, in effect, stated in Division V hereof that the general statute authorizing municipalities "to vacate and dispose of" streets, public parks, etc., was sufficient authority for the diversion here complained of. It may be added that even if this were not true, we see no constitutional objection to a general statute permitting diversion from one public use to another public use deemed desirable, where no contract rights or questions of estoppel are involved.

The right to "vacate and dispose of" is certainly a much broader one than the right to divert from one public use to another. Conditions change. What was in the public interest in 1838 might well be different in 1890. Even the location of the State capital was subject to change. The original capitol grounds were diverted to the use of the State University.

We are convinced there were no constitutional barriers to the transaction in 1890 involving this park.

VII. What we have said disposes of the case upon its merits without consideration of questions of limitation, laches and estoppel that naturally suggest themselves after a lapse of fifty-eight years. It is not necessary to extend this already long discussion to cover those complex and delicate questions. For reasons already indicated we have preferred to determine the rights of the city, the state, the university, and the public, as created by the various legislative acts of Congress, the territorial legislature, the state legislature and the city council. We have even treated the case as one which plaintiff could bring on behalf of the public as a class and against the State of Iowa.

The decision of the trial court is right in its result because of the considerations we have set forth and it is affirmed on those grounds.—Affirmed.

HALE, C.J., and OLIVER, BLISS, WENNERSTRUM, MULRONEY, and HAYS, JJ., concur.

GARFIELD, J., takes no part.

MANTZ, J., not sitting.