EARL GRITTON, appellant, v. CITY OF DES MOINES et al., appellees, and PHILIP E. JESTER et al., intervenors-appellees.

No. 48847.

(Reported in 73 N.W.2d 813)

DECEMBER 13, 1955.

Don Beving, of Des Moines, for appellant.

Harold H. Newcomb, Frank D. Bianco and Don C. Swanson, all of Des Moines, for appellees.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for intervenors-appellees.

GARFIELD, J.—Plaintiff, a resident property owner and tax-payer, brought this action in equity to enjoin the City of Des Moines from conveying a tract of land owned by it to Hawley Welfare Foundation, a nonprofit corporation, as a site for a

building it plans to erect. Hawley Welfare Foundation, Community Chest of Des Moines and Philip E. Jester, a resident taxpayer, intervened by joining with the city as permitted by rule 75, Rules of Civil Procedure. Trial to the court was on stipulated facts. Plaintiff was denied relief and has appealed to us.

Plaintiff's basic contention is that the city is without statutory power to make the conveyance. He also contends that in any event it "is not in the public interest" within the meaning of section 368.40, Code, 1954. The district court held against plaintiff on both propositions.

The tract in question, near the east bank of the Des Moines River, is the west half of the block lying east of East First Street, between East Locust Street on the north and East Walnut on the south. The city acquired it between 1919 and 1923, inclusive, in six different parcels for a total consideration of $160,301. It was stipulated the present value of the land is not less than this amount. One of the six parcels was acquired by condemnation for $35,000, the others by voluntary conveyance. The city paid for the tract with proceeds of a bond issue in 1923. The bonds bore 4½% interest with maturity between 1926 and 1966. When and if the bonds are retired the city will have paid $391,756.50 in principal and interest for the tract in question.

The purpose for which the city acquired the tract is not shown except that it was for a "Park Art Memorial." It is admitted in argument it is now used as an automobile parking lot for employees of the city hall and federal court building and others. There were two alleys on the tract. The city vacated them about three weeks after this action was commenced. One vacated alley is 280 feet in length along the east side of the tract. The other extends east and west 132 feet midway between Locust and Walnut Streets. Both alleys are 16 feet wide.

The city was paid $5000, apparently by Community Chest, for conveyance of the tract. The Chest's principal interest in the transaction appears to be that the building Hawley Foundation plans to build on the tract is to house the Chest as well as the Foundation. The $5000 is to defray the estimated cost to the city of realigning First Street which is not straight at the northwest corner of the tract.

The city council first authorized conveyance of the land on November 22, 1954. This action was commenced one month later. The council then caused notice to be published, pursuant to section 368.39, Code, 1954, of the proposed conveyance. February 7, 1955, the council again authorized the conveyance "with a reservation that if the property ever ceases to be used for public welfare or public community services it shall revert to" the city. There was a like reservation in the action taken by the city on November 22. February 10, 1955, plaintiff amended his petition herein by stating it should also be considered as an appeal from the action of the council on the ground it "is not in the public interest."

Hawley Welfare Foundation was incorporated in 1927. Its articles state its object "is to establish a community trust for the City of Des Moines and State of Iowa; to invite and accumulate funds and properties to use in the service of mankind, assisting others to help themselves; to constructively bind and strengthen the ties of family life and to make more safe for this and coming generations the best traditions of the race; to do research work; to give assistance to welfare or other organizations, or to individuals without regard to race, religious or other affiliations."

The will of Henry B. Hawley (executed one week after the articles of incorporation just mentioned) directs his executors to expend not less than $100,000 nor more than $250,000 to erect and equip a building to be known as "Hawley Welfare Building" (the gift of Henry B. and Carrie M. Hawley) as soon as Hawley Welfare Foundation can acquire by gift from the city or other source a suitable site therefor. This is the building it is proposed to build on the tract acquired from the city.

Upon the trial the facts above mentioned were stipulated. It was also agreed that if Donald Anderson were called as a witness he would testify he was planning director of the city for the past three years; location of the proposed building on the site in question is in accordance with good city planning and with the plan for the Des Moines River Front Civic Center area which has been approved and adopted after many years of study (evidently by the City Plan Commission); the proposed site was

selected and recommended above others; it is Anderson's opinion the city and its citizens will benefit by construction of the building, appearance of the River Front Civic Center area will be enhanced and beautified and other public property contiguous and adjacent will be increased in value.

It was also stipulated that if Arthur Kirk, prominent Des Moines realtor, were called as a witness he would express the same opinion, just referred to, as Anderson.

At the outset we stated plaintiff's two principal contentions. Defendants and intervenors argue that since the objects of Hawley Foundation are public and charitable the conveyance from the city results in merely a transfer from one public use to another which they say Code sections 368.39 and 368.40, heretofore mentioned, enacted by the Fifty-fourth General Assembly in 1951, authorize. Section 368.39, so far as pertinent here, provides:

"They [cities and towns] shall have power to dispose of the title or interest of such corporation in any real estate, or any lien thereon, or sheriff's certificate therefor, owned or held by it, including any street or portion thereof vacated or discontinued, however acquired or held, in such manner and upon such terms as the council shall direct. * * * Notice of any proposal to dispose of real property under the provisions of this section shall be given by publication, once each week for two consecutive weeks in the manner provided by section 618.14. * * *."

The first sentence of 368.39 is almost identical with section 403.12, Code, 1950, and a like provision in earlier Codes as early as that of 1897.

Section 368.40, an entirely new enactment, states: "Whenever the council of any municipal corporation enters into an agreement for the sale, lease, or disposal by other means of any municipal property, any elector of such municipal corporation shall have the right to appeal from the action of the council to the district court, within thirty days of the final action thereon by the council, on the ground that such agreement is not in the public interest. All such agreements shall be voidable pending the decision of the court."

Defendants and intervenors also contend—and, as stated,

plaintiff denies—the conveyance from the city is in the public interest.

I. It is fundamental that municipal corporations are wholly creatures of the state legislature. They have no inherent power to do what was done here. They possess and can exercise only the powers (1) expressly granted by the legislature (2) necessarily or fairly implied in or incident to the powers expressly granted, and (3) those indispensably essential—not merely convenient—to the declared objects and purposes of the municipality. Brooks v. Incorporated Town of Brooklyn, 146 Iowa 136, 141, 124 N.W. 868, 26 L. R. A., N. S., 425; Van Eaton v. Town of Sidney, 211 Iowa 986, 989, 231 N.W. 475, 476, 71 A. L. R. 820, and citations; Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 731, 277 N.W. 291; Iowa Electric Co. v. Town of Cascade, 227 Iowa 480, 483, 288 N.W. 633, 634, 129 A. L. R. 758; Cowin v. City of Waterloo, 237 Iowa 202, 210, 21 N.W.2d 705, 709, 163 A. L. R. 1327; 2 McQuillin, Municipal Corporations, 3d Ed., section 10.09, page 593; 62 C. J. S., Municipal Corporations, section 117a; 37 Am. Jur., Municipal Corporations, section 112.

Earlier decisions stating the rule substantially as we have expressed it are Heins v. Lincoln, 102 Iowa 69, 77, 71 N.W. 189, and cases cited therein.

The powers conferred upon municipalities are to be strictly construed and when there is uncertainty or reasonable doubt as to the existence of power it will be denied. City of Onawa v. Mona Motor Oil Co., 217 Iowa 1042, 1045, 252 N.W. 544; Van Eaton v. Town of Sidney, supra, and citations at page 990 of 211 Iowa; Brockman v. City of Creston, 79 Iowa 587, 589–591, 44 N.W. 822; 2 McQuillin, Municipal Corporations, 3d Ed., sections 10.18, 10.19, pages 621–625; 62 C. J. S., Municipal Corporations, section 119a; 37 Am. Jur., Municipal Corporations, section 113. See also Huff v. City of Des Moines, 244 Iowa 89, 92, 56 N.W.2d 54, 56; Peterson v. Town of Panora, 222 Iowa 1236, 1240, 271 N.W. 317; Ebert v. Short, 199 Iowa 147, 151, 201 N.W. 793.

II. Code sections 368.39 and 368.40 are the statutes appellees claim confer upon the city the power to do what is attempted here. No other statute seems to be relied upon and

none has been called to our attention. We have quoted the pertinent part of 368.39 and all of 368.40. Only 368.39 purports to be a grant of power. In our opinion these statutes do not confer upon the city the power it has attempted to exercise and it has no such power.

The city proposes to deed to a private corporation not under its control, to be used for nonmunicipal purposes, property the city holds in its governmental capacity concededly worth more than 32 times the monetary consideration received therefor. It may be the legislature could expressly authorize such a transaction. We need not decide the point. But if it desires to grant such authority to municipalities it is not too much to require it to do so in unequivocal language, not in the general terms found in 368.39.

Keeping in mind the rule that municipal powers are strictly construed and doubts are resolved against their existence it seems obvious section 368.39 is not an express grant of the power the city wants to exercise. It is scarcely less apparent such power is not necessarily or fairly implied in or incident to the power 368.39 expressly grants. And it cannot reasonably be argued the power the city has exercised is indispensable to the declared objects and purposes of the municipality.

We have gone further in denying claims to municipal power than plaintiff asks of us here. Heins v. Lincoln, supra, 102 Iowa 69, 76–80, 71 N.W. 189, 191, holds express authority in a city council " 'to borrow money for any object or purpose in their discretion, and to pledge the faith of the city for the payment thereof' " is to be "construed as giving power to borrow money only for legitimate corporate purposes" and does not include power to issue 20-year negotiable bonds in connection with the city's borrowing. Harrison v. Palo Alto County, 104 Iowa 383, 388, 73 N.W. 872, decides that power in a county to sell and convey lands does not include power to execute a warranty deed therefor. Van Eaton v. Town of Sidney, supra, 211 Iowa 986, 992, 994, 231 N.W. 475, 478, 71 A. L. R. 820, 827, holds that power to establish and maintain an electric light and power plant and issue bonds for payment of the cost does not include the power to pledge the rents, income and profits from such a plant,

to be constructed in the future, as security for the payment of machinery purchased for the plant.

Appellees call attention to the language of 368.40 which authorizes an elector to appeal from the action of a city council whenever it "enters into an agreement for the sale, lease, *or disposal by other means* of any municipal property." Bearing in mind that, as stated, 368.40 does not purport to be ,a grant of municipal power, we think the words italicized by us upon which reliance is placed do not confer the power the city has exercised. At best the italicized language leaves the matter uncertain and doubtful.

It may be the city and its inhabitants would benefit from the erection of the proposed building and the appearance of the river front would be enhanced. But these facts afford no justification for enlarging by construction the powers conferred upon a municipality. The location of a large factory or a new hotel in the city might result to even greater advantage of its citizens. Yet it could hardly be argued the city could legally make a virtual gift of its property for such purposes.

Nor is it sufficient justification for this transfer that the objects of Hawley Foundation are public and charitable and the property is to be used "for public welfare or public community services." The fact remains it is an unauthorized, virtually gratuitous diversion of municipal property to a private corporation to be used for nonmunicipal purposes. If the city can do what is proposed here it could transfer property of great value for a nominal monetary consideration to the Red Cross, Y.M.C.A., Boy Scouts or other similar organization that renders laudable service to the community.

We apprehend appellees would concede the city is without power to raise by taxation from its citizens a large sum for the benefit of such an organization as Hawley Foundation or Community Chest, however commendable its objects may be. See Board of Education v. Alton Water Co., 314· Ill. 466, 145 N.E. 683, 685. The effect of approving this transaction is to permit the city to do, by indirection, just that. As previously explained, the city acquired this property by exercise of the taxing power. We do not mean to question appellees' good faith.

We think our decision is supported by fundamental princi-

ples of municipal law as well as by textbooks and precedents. Brockman v. City of Creston, supra, 79 Iowa 587, 589, 590, 44 N.W. 822, is quite in point. There the city erected a building on lots owned by it and attempted to convey the property, worth $35,000, with certain restrictions, to the county for a courthouse upon relocation of the county seat at Creston. At the suit of a nonresident taxpayer we enjoined the transaction as beyond the power of the city notwithstanding statutory provisions similar to the present section 368.39. The opinion states:

"A city may sell its lands when its interests require that they be sold; but it possesses no authority to give away, or to convey, without consideration, or for a purpose which it has no authority to advance, any of its property. The city holds its property for the uses and benefits of the people. It is, as it were, a trustee for its citizens, and must use the property it holds for purposes sanctioned by law. There is no statute authorizing a city to erect buildings for the county, or to give to it a house and lands, to induce the relocation of the county seat. It may probably be to the advantage of the city and its citizens to induce such an act. It may probably result to the great advantage of the citizens that manufactories, storehouses, hotels and the like be constructed. But it is not within the authority of the city to convey its property for such purposes."

A precedent somewhat similar to Brockman v. City of Creston, supra, is Myers v. City of Jeffersonville, 145. Ind. 431, 44 N.E. 452, which holds a city is without power to incur indebtedness for a lot, courthouse and jail for a county upon removal of the county seat to the city in question. A like holding is Russell v. Tate, 52 Ark. 541, 13 S.W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193.

A well-considered decision, analogous on principle, is Eastern Illinois State Normal School v. City of Charleston, 271 Ill. 602, 605, 111 N.E. 573, 574, L. R. A. 1916D 991, which denies the power of a city to agree to furnish water to an educational institution for 50 years for a consideration of $5 as an inducement to it to locate in the city. The statute authorized cities to fix such water rates as the council "shall deem just and expedient."

Brooks v. Incorporated Town of Brooklyn, supra, 146 Iowa

136, 148, 124 N.W. 868, 872, 26 L. R. A., N. S., 425, holds a city is without power to build an opera house and assembly hall as part of a building to be used for a city hall and fire station. The opinion says: "However desirable it may be for rural towns to have a large assembly hall or opera house, it is not within the power of the town council to build it." The Brooks opinion cites and quotes with approval from Kingman v. City of Brockton, 153 Mass. 255, 26 N.E. 998, 11 L. R. A. 123, which holds a city has no power to appropriate money for a memorial hall to be used in part by a certain post of the G. A. R. during its existence.

Brister v. Leflore County, 156 Miss. 240, 125 So. 816, decides that the legislature cannot authorize a county or city to acquire a hospital through taxation and donate it to a private person or corporation, without reservation of control and dominion over the property.

Buckhout v. City of Newport, 68 R. I. 280, 290, 27 A.2d 317, 322, 141 A. L. R. 1440, 1446, 1447, sets aside as void a city's conveyance of land to a historical society. The consideration, if any, for the transfer does not appear. This from the opinion is directly applicable here: "As a final contention respondents argue that the transfer of this property * * * was a transfer by the city to a nonprofit, charitable, public corporation for the service of the public and was, therefore, in reality no more than a change of public use. We cannot agree that the society is in any sense a public corporation, even though it does perform certain services of interest and benefit to the public. [Citation] However laudable the objects of the society may be * * * they are nevertheless not in any way required of the city as the agent of the sovereignty of the state. In using the public property to carry out such objects, it can hardly be said that the society is engaged in the exercise of a public function in the sense that such property is thereby devoted to a public use. But even if it could reasonably be said that it was so engaged, we would still be bound to say that such change by the city of the public use of its property without the specific authorization of the legislature would be void."

Among numerous decisions that a municipality cannot lawfully give away public money are Board of Education v. Alton Water Co., supra, 314 Ill. 466, 145 N.E. 683, 685; City of Ful-

ton v. Northern Illinois College, 158 Ill. 333, 42 N.E. 138; Trowbridge v. Schmidt, 82 Miss. 475, 34 So. 84.

10 McQuillin, Municipal Corporations, section 28.43, page 106, states: "* * * a municipality cannot give away its property or expend money for purposes other than corporate ones, and it follows that a municipality has no power in any manner to dispose of property of the corporation without consideration, where not for a corporate purpose."

38 Am. Jur., Municipal Corporations, section 487, page 167, says: "However, a municipality cannot ordinarily lawfully sell its property for a grossly inadequate price, since such a transaction is in effect a gift of public funds."

63 C. J. S., Municipal Corporations, section 965, states: "* * * a power of use and disposal of municipal property does not include the power of donation or gratuitous disposition, * * *."

III. We have carefully considered the precedents cited by able counsel for appellees. We do not regard them as in point or in conflict with the conclusion herein reached. In the main they are of two kinds.

First are cases which uphold the constitutionality of a statute *expressly* granting to a municipality the power to donate money or property in aid of some project it is thought promotes the public welfare. City of Minneapolis v. Janney, 86 Minn. 111, 113, 90 N.W. 312, 313, is illustrative of these precedents. It holds valid a statute which plainly authorized the city to donate land to an exposition company as a site for an exposition. The opinion says, "No doubt can exist as to the intent of the legislature to empower a conveyance as a gratuity * * *." Another case of this type, Finan v. City of Cumberland, 154 Md. 563, 141 A. 269, emphasizes that *specific* legislative direction is required for a municipal appropriation to a privately owned charity.

In the second place appellees cite precedents which uphold a transfer of money or property by a municipality in the performance .of a purely municipal function for which the collection of taxes was authorized. Commonwealth ex rel. Firemen's Relief Assn. v. Barker, 211 Pa. St. 610, 61 A. 253, and

Furlong v. South Park Commissioners, 340 Ill. 363, 172 N.E. 757, are cases of this type.

At least some of the precedents appellees cite say or assume a municipality is without power to donate money or property without express statutory authority.

IV.  Carson v. State, 240 Iowa 1178, 1181, 38 N.W.2d 168, 171, only Iowa decision appellees cite, involves different facts and legal principles. There the city council of Iowa City passed an ordinance granting *to the state* for its university use of ground *never privately owned,* designated as a park on the original city plat of land appropriated by Congress for the seat of territorial government. The legislature promptly enacted that the ordinance be " 'legalized and confirmed,' " and " 'made effectual and valid' "; also that the grant be accepted for the use and benefit of the State University. Fifty-eight years later a citizen of Iowa City sought to have the ordinance declared invalid and we affirmed dismissal of her suit.

The Carson opinion by Smith, J. (at page 1183 of 240 Iowa, page 172 of 38 N.W.2d) thus states the most important question for decision: "whether the city could, *with legislative approval,* divert the use of the area from public park to State University purposes." (Italics added.) The opinion emphasizes the almost unlimited control the legislature has over municipalities (page 1186 of 240 Iowa, pages 172, 173, of 38 N.W.2d) and that the land there involved was never privately owned (page 1189 of 240 Iowa, page 175 of 38 N.W.2d). It is plain the transfer of use of such ground, *with legislative approval,* from a municipality *to the state* presents a much different case than the one now before us.

Hickey v. Burke, 78 Ohio App. 351, 362, 69 N.E.2d 33, 39, appeal dismissed, 147 Ohio St. 217, 70 N.E.2d 274, points out the vital distinction between such a case as Carson v. State, supra, and the present one: "As we view it, it is one thing for one political subdivision to transfer to another subdivision and an entirely different thing for the sovereign state, acting under the authority of its legislative branch, to accept a transfer from one of its arms or instrumentalities as political subdivisions are."

When we observed in the Carson opinion, supra (page 1188

of 240 Iowa, page 175 of 38 N.W.2d), that Brockman v. City of Creston, supra, 79 Iowa 587, 44 N.W. 822, was not there in point we doubtless had in mind about what is said in the above quotation from Hickey v. Burke.

It is thoroughly settled that the state, through its legislature, may take full control of the public property of municipalities and place it under more direct state supervision. It may, at its pleasure, withdraw the power of municipal corporations to hold such property or take it without compensation, hold it itself or vest it in other agencies, with or without consent of the citizens. 2 McQuillin, Municipal Corporations, 3d Ed., section 4.132, page 190; 1 Dillon, Municipal Corporations, 5th Ed., section 115, pages 196, 197; 37 Am. Jur., Municipal Corporations, section 92, pages 701, 702; 62 C. J. S., Municipal Corporations, section 189; 63 C. J. S., Municipal Corporations, section 965 ("Under appropriate statutory permission a municipal corporation may donate land to the state for a public use, * * *."); City of Clinton v. Cedar Rapids & Missouri River R. Co., 24 Iowa 455, 475 et seq. (a leading case, repeatedly cited with approval, in which Dillon, C. J., says municipal corporations are "mere *tenants at will* of the legislature"); City of Des Moines v. District Court (Bliss, C. J.), 241 Iowa 256, 263, 264, 41 N.W.2d 36, 40, and citations ("The money which the petitioner collects * * * it receives only by legislative authority. What the state gives it can as readily take away.").

We are clear there is no conflict between the decision in Carson v. State, supra, 240 Iowa 1178, 38 N.W.2d 168, and the views here expressed.

V. Since we hold the city is without legislative authority to do what was attempted here it is unnecessary to decide whether its agreement with Hawley Foundation "is not in the public interest" within the meaning of section 368.40, heretofore quoted. Nevertheless the issue is presented and it is proper that we express our opinion thereon.

If 368.40 (enacted in 1951) is to be given effect, any elector who properly appeals is entitled to the district court's judgment on whether such an agreement is in the public interest. And where, as here, the decision is adverse to him he is entitled to appeal to us upon that issue.

It is our view the transaction plaintiff has challenged is not in the public interest. As we have explained, the city proposes, without express or implied legislative authority and for a grossly inadequate monetary consideration, to transfer to a private corporation valuable property the city holds in its governmental capacity. Effect of the transaction is that Des Moines taxpayers are assessed a large amount for the benefit of a private corporation engaged in nonmunicipal functions. It is a misappropriation of taxes or of property acquired with taxes.

For a decree in harmony herewith the cause is—Reversed and remanded.

All JUSTICES concur.