CITY OF MASON CITY, appellant, v. E. L. ZERBLE, appellee.

No. 49595.

(Reported in 93 N.W.2d 94)

■ 

■ 

■ 

■ 

■ 

■ 

NOVEMBER 18, 1958.

Ray E. Clough, of Mason City, for appellant.

Breese & Cornwell, of Mason City, for appellee.

THOMPSON, J.—On March 24, 1956, the plaintiff, City of Mason City, enacted its Ordinance No. 718. It is entitled: "AN ORDINANCE creating the office of Electrical Inspector; prescribing the duties of said inspector; providing rules for the prevention of fire, safety of life, and the installation of wiring and equipment and operation thereof; providing permits and permit fees for the installation of electrical wiring and equipment; providing for the examination, licensing and bonding of electricians; providing a penalty for the violation hereof, and repealing all previous electrical ordinances."

Section 19 of the ordinance, with which we are chiefly concerned here, is also set out in full:

"Licenses Required.

"No person, firm or corporation shall engage in the business of installing, maintaining, altering or repairing any electrical equipment within the scope of this ordinance unless such person, firm or corporation shall have obtained from the City of Mason City an Electrical Contractor's license, nor shall any such Electrical Contractor employ any but licensed electrical journeyman, employed by and working under, the direction of the holder of the license for one of the classes of licenses prescribed by this ordinance for apprentices working under the supervision, direction and control of a licensed electrical journeyman; except that the holder of existing electrical licenses or certificates granted by the City may be issued renewals of their licenses or certificates without taking the examinations herein provided for; and also with the exception that no license shall be required in order to execute or perform any of the classes of electrical work exempted by the provisions of this ordinance. No license shall be required for the following described work:

"(a) Any of the three (3) classes of electrical work for which no permit is required as provided in Section 7 hereof.

"(b) Any work involved in the erection, installation, repairing, remodeling or maintenance of elevators, dumb-waiters or escalators, not including electrical equipment for supplying current to the control panels of elevators, dumb-waiters or escalators.

"(c) The assembly, erection and connection of electrical equipment by the manufacturer of such equipment, but not including any electrical equipment other than that involved in making electrical connections on the equipment itself, or between two or more units of said equipment."

Section 20 provides for three classes of licenses: an electrical contractor's license, an electrical maintenance license and an electrical journeyman's license. Section 21 fixes the annual fees to be charged for licenses. Section 23 requires the holder of a Class I or electrical contractor's license to furnish a $5000 bond with conditions not important here. It is apparent also that the ordinance requires a permit from the city before any major electrical work can be done, and that no one except a holder of a Class I license, the electrical contractor's license, may apply for or secure this permit.

The defendant was charged with three separate violations of Ordinance No. 718. The first charge was that he engaged in the business of installing, maintaining, altering or repairing electrical equipment upon certain real estate without first obtaining a proper license therefor, in violation of Section 19, supra. The second and third offenses charged were the failure to obtain a permit for doing the same work on the same property. Upon conviction in police court the defendant appealed to the Cerro Gordo District Court, which held Ordinance No. 718 invalid so far as it attempted to require the procuring of licenses as set out above. It is from that decision that we have the present appeal.

I. The sole question before us is the power of the City of Mason City to require licenses as provided by Section 19 and following sections. One of the charges against the defendant is a direct one of doing electrical work without a license. The other two charge doing the same work without a permit; but since only the holder of a contractor's license may secure a permit, the same problem is involved. Chapter 368 of the Code of 1954 deals with the general powers of municipal corporations. Section 368.9 is the important one with which we are here concerned. We quote it so far as material:

"368.9 Buildings. They shall have power to adopt a build-

ing code, and they may provide for the regulation and inspection of all construction, major repairs and remodeling, and the installation of electrical, heating, ventilating, air conditioning, and plumbing fixtures, apparatus, and equipment."

It is the contention of the plaintiff-city that the power to regulate includes the power to license. This the defendant denies. He urges that in attempting to license under the authority granted by section 368.9 the city has exceeded the power granted it. The city also says that the power to license is a necessary part of the general police powers granted to cities and towns by section 366.1 of the Code. We shall deal with this argument in Division II, infra.

The question of whether a grant of the power to regulate carries with it the power to license has been before this court in earlier cases. There are some general principles concerning implied powers given municipalities by the legislature, which are well stated in Gritton v. City of Des Moines, 247 Iowa 326, 331, 73 N.W.2d 813, 815. It is there said:

"It is fundamental that municipal corporations are wholly creatures of the state legislature. They have no inherent power to do what was done here. They possess and can exercise only the powers (1) expressly granted by the legislature (2) necessarily or fairly implied in or incident to the powers expressly granted, and (3) those indispensably essential—not merely convenient—to the declared objects and purposes of the municipality."

Many authorities holding to the same rules are set out immediately following the quotation set out above. The governing principles are well settled, and it would serve no useful purpose to again discuss and analyze them.

The general rule seems to be, as the plaintiff contends, that a grant of power to municipalities to regulate includes the power to license, within reasonable limits. It is so stated in section 26.27, McQuillin on Municipal Corporations. Cases from other jurisdictions holding the same principle might be cited. On the other hand, the defendant cites and relies upon Town of Akron v. McElligott, 166 Iowa 297, 147 N.W. 773, Ann. Cas.

1916E 692; Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N.W. 324, 27 L. R. A., N. S., 1150; City of Des Moines v. Gilchrist, 67 Iowa 210, 25 N.W. 136, 56 Am. Rep. 341; and City of Burlington v. Baumgardner, 42 Iowa 673. In each of these there is language of varying degrees of definiteness and applicability, which says that regulation and licensing are two distinct powers and the grant of the former does not include the latter, either as a power expressly given, or necessarily or fairly implied in or incident to it, or indispensably essential thereto. Town of Akron v. McElligott, supra, is particularly close to the point at issue here, since it concerns the power to license electricians. The empowering statute was somewhat different at that time, but it is doubtful if the case can fairly be distinguished from the one before us.

■ However, we shall not take the time and space needed to analyze these cases, and we shall not determine whether we would follow them against the general trend of authority in other jurisdictions if nothing else appeared in the case at bar. Something else which is controlling is before us. The Iowa legislature has made it clear that it draws a distinction between "regulate" and "license", and that it did not consider that by giving the municipalities power to regulate it intended that the power to license should be considered as either implied in, incident to, or indispensably essential thereto.

We have set out that portion of section 368.9 which gives the municipality power to "regulate and inspect" electrical installations. Immediately preceding this section are sections 368.5, 368.6, 368.7, and 368.8; and following it, in the same Code chapter, is section 368.17. Section 368.5 gives cities and towns the power to "regulate" slaughterhouses and parades. Section 368.6 gives them power to "regulate and license" hotels, engineers, peddlers, billboards, and sales. Section 368.7 says they "shall have power to restrain and prohibit" barbed wire, tainted provisions, refuse, junk, pawnbrokers, animals running at large, riots, begging, gambling and gambling houses. Section 368.8 gives power to "regulate, license, or prohibit" public dance halls, billiard halls, circuses, dogs, sales at auction, and gasoline curb pumps. Section 368.17 says that cities and towns may adopt "a set of plumbing regulations" not inconsistent with state law;

and in the following sentence provides that they shall have authority "to examine and license plumbers."

It is abundantly apparent from the foregoing that the legislature has drawn a distinction between "regulate" and "license" which shows it did not consider the former includes the latter. Section 368.5 says only "regulate"; but in the immediately following section, 368.6, and in 368.8, "regulate" is followed by "license." The latter word was totally unnecessary if the lawmaking body had considered that it was included in the former. So, in 368.17, after giving power to adopt ordinances regulating plumbing installations and to provide for their inspection— which is what section 368.9 does for electrical installations—it was thought necessary to add a further provision giving authority to examine and license plumbers. Whatever the rule may be elsewhere, it is apparent that our own legislature has considered that when it meant to grant the power to license it was essential to use the word "license." By no process of reasoning can we reach the conclusion that electricians may be licensed under a law providing for regulation and inspection only, when it was thought necessary under a statute also providing for regulation and inspection to add specific words granting the power to license plumbers.

▮ Grants of power to municipalities are strictly construed against the authority claimed, and where there is uncertainty or reasonable doubt as to its existence it must be denied. Gritton v. City of Des Moines, supra, page 331 of 247 Iowa, page 816 of 73 N.W.2d, and citations. In the case at bar, however, there seems little room for uncertainty or doubt; the legislative intent that regulation does not include licensing has been made too clear for reasonable argument.

II. We come then to plaintiff's contention that the general power granted to cities and towns by Code section 366.1 is sufficient to authorize the license requirements of Ordinance No. 718. Section 366.1 gives municipal corporations power to enact ordinances "such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof * * *." It has been held that a "general welfare" statute, such as this, gives municipalities

broad powers, including licensing. Minneapolis Street Railway Co. v. City of Minneapolis, 229 Minn. 502, 40 N.W.2d 353; Lyons v. City of Minneapolis, 241 Minn. 439, 63 N.W.2d 585; Klever Shampay Karpet Kleaners, Inc. v. City of Chicago, 323 Ill. 368, 154 N.E. 131, 49 A. L. R. 103; City of Chicago v. Wonder Heating & Ventilating Systems, Inc., 345 Ill. 496, 178 N.E. 192.

 But another obstacle confronts the plaintiff-city. We have held in Division I that under section 368.9 the city does not have the power to license in connection with electrical installations, for the reasons stated. Section 366.1 is a general statute; section 368.9 with the other sections of chapter 368 referred to in Division I are special statutes defining the powers of municipalities in dealing with particular business or occupations. Under such circumstances we look to the special statute, which governs if the general and special enactments cannot be reconciled. Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 152, 86 N.W.2d 104, 108, 109, and citations. Since the special statutes in chapter 368, supra, deny a grant of the power to license, as we have held in Division I, it cannot be found in the general statute, section 366.1. The legislature has made it too clear that it draws a distinction between "regulate" and "license" to admit of doubt.

 III. The plaintiff urges that much weight must be given to what it thinks is the administrative interpretation placed upon section 368.9 and its predecessor enactments. It is true that where the proper meaning and construction of a statute are doubtful, weight is given to administrative interpretations of long standing. Northwestern States Portland Cement Co. v. Board of Review, 244 Iowa 720, 733, 58 N.W.2d 15, 23, and cases cited. But this rule has no application unless the meaning of the statute is in doubt. Administrative authorities cannot change the law by giving to a statute an interpretation which is obviously not within its terms. They cannot create rights or liabilities which are clearly not within the express intent of the statute. School District of Soldier Township v. Moeller, 247 Iowa 239, 73 N.W.2d 43, 49; Iowa Mutual Tornado Insurance Assn. v. Fischer, 245 Iowa 951, 960, 65 N.W.2d 162, 168; Iowa Farm Serum Co. v. Board of Pharmacy Examiners,

110

240 Iowa 734, 742, 35 N.W.2d 848, 852. We think the legislative enactments under consideration here are so free from doubt or ambiguity there is no room for executive interpretation.

■ IV. Finally the plaintiff urges that ordinances of a municipality are presumed to be reasonable, valid and constitutional. This is the rule; but it has no force or effect when an ordinance is plainly void.

V. We make no pronouncement upon the wisdom of the sections of Ordinance No. 718 which we have held are beyond the power of the city to enact. This is a matter beyond our proper province. It is for the determination of the legislature, which has made its intent clear.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.