BOARD OF WATER AND LIGHT TRUSTEES of the CITY OF MUSCATINE, appellee, v. CITY OF MUSCATINE and members of CITY COUNCIL, appellants.

No. 50542.

FEBRUARY 6, 1962.

Robert B. Jehring, City Attorney, and R. K. Stohr, both of Muscatine, for appellants.

C. J. Rosenberger, of Muscatine, for appellee.

THOMPSON, J.—The controversy to be determined here is whether the plaintiff, Board of Water and Light Trustees of the City of Muscatine, hereinafter referred to as the board, or the defendants, represented by the city council of the City of Muscatine, hereinafter designated as the council, has the right to fix the salaries of the members of the board. The plaintiff brought its declaratory-judgment action for the purpose of testing this question. The trial court upheld the plaintiff's contention, and entered its decree and judgment accordingly. The defendants appeal.

The facts are stipulated. They may be summarized. The City of Muscatine is a special charter city, and at all times material here had a population of less than 25,000. Also at all material times the city had municipally owned waterworks and electric light and power plants. Since March 30, 1929, these plants have come under the provisions of Senate File No. 288 of the Acts of the Forty-third General Assembly, which now appear as sections 420.297 to 420.304 of the Code of 1958. On March 29, 1929, the then mayor of the city, in accordance with the Act, appointed trustees of the co-ordinated Board of Water and Light Trustees, their terms to commence on March 30 next. These trustees took office accordingly, and since that date the water and light plants have been operated by the board of trus-

tees. At present there is a board of five trustees having charge of the operation and management of the two municipal plants.

On March 28, 1929, the council passed an ordinance which among other provisions fixed the salaries of the members of the new board at $50 per month each. On April 9, 1929, at the first regular meeting of the newly appointed board, it adopted a rule which also fixed the salaries of the members at $50 per month. The council and the board being thus in agreement as to the salaries of the board members, no friction developed on the point until the council, on or about December 15, 1955, repealed so much of the original ordinance as fixed the salaries at $50 per month, and enacted the following in lieu thereof: "The salary of each Trustee appointed and serving on the Board of Water and Light Trustees shall be ($50.00) per month until December 29, 1959, after which time all Trustees shall serve without pay." This ordinance is challenged by the present action. The board contends the council has no power to fix the salaries of the board members, and that its action in attempting to establish their compensation at zero was void. The trial court so held.

I. Case authority on the point is entirely lacking in Iowa. While some cases are cited by the contending parties, upon examination we find them pertinent only so far as they establish broad general rules governing the powers, rights and duties of municipal corporations. The real authority for the rights of the contending parties must be found chiefly in the statutes.

Prior to the enactment into law of Senate File 288 of the Acts of the 43d G.A., the City of Muscatine had both municipal waterworks and electric light and power plants, which were operated and managed by separate boards of trustees. The material part of the 1929 enactment is found in sections 420.297, 420.300 and 420.303, which we set out in order following:

"420.297 Management. In special charter cities having a population of less than twenty-five thousand owning two or more public utility plants and works, as provided for under chapter 397, such works and plants shall be managed, operated, extended and controlled by a co-ordinated board of trustees which shall be composed of five resident electors appointed for the term

of five years by the mayor of said city. When once established such cities shall continue under the provisions hereof regardless of change of population.

"420.300  Compensation.  The compensation of said trustees shall not be more than six hundred dollars per annum to each member of said board.

"420.303  Powers and duties.  The said board of trustees shall have and exercise all of the powers, duties and obligations enumerated in and conferred upon such boards by chapters 397, 398, 399, 401 and this chapter appertaining to heating plants, waterworks, gasworks, electric light or electric power plants, and said board of trustees may anticipate the revenues of such works and plants for a period not to exceed three years for the operation, extension, betterment and improvement of such works and plants."

Other sections deal with terms, vacancies and removals not material here.

It is evident from these sections that the legislature required a co-ordinated board of trustees; that salaries of the members may not exceed $600 each per annum; and that the powers and duties of the board must be found in chapters 397, 398, 399, and 401 of the Code. In chapter 397, which deals with municipal public utility plants generally, we find section 397.34: "Powers of trustees. The board of trustees shall have all the power and authority in the management and control of the utilities mentioned in the question submitted to the voters at such election as is conferred upon waterworks trustees appointed as provided in chapter 398." In section 398.9, pertaining to disbursement of funds of the plants, we find: "* * * Such moneys shall be paid out by the city treasurer only on the written order of the board of waterworks trustees, who shall have full and absolute control of the application and disbursement thereof for the purposes prescribed by law, including the payment of all indebtedness arising in the construction of such works, and the maintenance, operation, and extension thereof."

The most cogent language pertinent to the present situation is found, however, in section 399.17 of chapter 399. This chapter relates to waterworks plants in cities of 50,000 population or

more. But by the express terms of section 420.303 it is made applicable to the operation and management of co-ordinated plants in special charter cities. The powers are broad. The board has "complete management and control" of the plants. It makes "all necessary contracts pertaining to the operation, maintenance, extensions, and improvements" of the plants; and it may sue and be sued.

II. There are in fact two questions involved here, although they are closely related. The first is, does the council have the right to fix compensation, or to decree no compensation for the members of the board? The second is, if the council does not have the power, may the board members fix their own salaries?

We may start with the assumption that the legislature intended that someone could fix compensation. It said, in section 420.300, that it should not be more than $600 per annum per member. It must also be noted that nowhere in the various sections from 420.297 to 420.304, which were added to the existing law by Senate File No. 288, supra, is there any mention of the city councils or of any powers delegated to them. The mayor makes the appointments; and, so far as these sections are concerned, that is the only function of the city government. The statute fixes the length of the terms; when they expire, new appointments are made. The city council is a stranger to these statutes. Certainly no express power is given it. Nor do we see how it is possible to imply any powers.

■■ The powers of municipalities are only those expressly granted by the legislature, those fairly implied in or incident to those expressly granted, and those indispensably essential— not merely convenient—to the declared objects and purposes of the municipality. Kane v. City of Marion, 251 Iowa 1157, 1159, 104 N.W.2d 626, 628; Gritton v. City of Des Moines, 247 Iowa 326, 331, 73 N.W.2d 813, 815; Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 1322, 78 N.W.2d 843, 849, 58 A. L. R.2d 1304; City of Mason City v. Zerble, 250 Iowa 102, 106, 93 N.W.2d 94, 96, 97. There is no express power granted, and so no powers can be implied or incident to any express power. Nor is the fixing of salaries in trustees under chapter 420 indispensably essential to the declared objects and purposes of

the city. We find no way in which it can be fairly said the city council has any power to fix salaries of the trustees. We must be mindful of the rule that "the powers conferred upon municipalities are to be strictly construed and when there is uncertainty or reasonable doubt as to the existence of power it will be denied." Gritton v. City of Des Moines, supra, loc. cit. 247 Iowa 331, 73 N.W.2d 816.

III. However, the legislature did express its intent that the trustees of the co-ordinated utilities might be entitled to salaries. This is found in section 420.300, supra, which limits the salaries to not "more than six hundred dollars per annum to each member." If the city council has no power to fix salaries, as we have decided above, the power seems necessarily to rest with the trustees. The defendant cites authority to the effect that fixing of salaries is ordinarily a legislative function. But we are cited to no holdings, and we find none, that the legislature may not give an administrative board power to fix the salaries of its members, particularly where the legislative intent that salaries may be paid is definitely expressed and a maximum amount per annum is fixed by statute. Hansen v. Henderson, 244 Iowa 650, 56 N.W.2d 59, cited and relied upon by the city, is not in point. It involved only the right of the city council of Sioux City to abolish by ordinance the board of waterworks trustees after it had been properly established in accordance with statute. We held the council did not have such power. In Board of Park Commissioners v. Marshalltown, 244 Iowa 844, 58 N.W.2d 394, the issue was the right of the city council to reduce the tax certified to it by the Board of Park Commissioners by refusing to permit the full amount of the proposed tax to be levied. We held the council was without power to so reduce the levy. Neither case has any bearing on the issue before us.

We think the intent of the legislature must be found first, in section 420.300, supra, where a maximum salary for the board members is fixed; and second, in section 420.303, which defines the powers and duties of the board by reference to those granted by chapters 397, 398, 399, and 401. Section 399.17, a part of chapter 399, is particularly important at this point.

It gives the trustees "complete management and control of said waterworks, together with all land and property now or heretofore held and used in connection therewith, with the right to make all necessary contracts pertaining to the operation, maintenance, extensions, and improvements of the same * * *." The broad power of management seems sufficiently inclusive to permit the board to fix salaries of its members within the limitations of section 420.300. This is especially true in view of the fact that no power over salaries is given to the city, and the legislature has been careful to provide a maximum beyond which the board may not go.

It should also be noted that the legislature in other statutes pertaining to administrative bodies has seen fit to give the municipalities power to fix salaries of the members of the boards. See section 370.5, which expressly authorized the city council to fix the salaries of the members of the board of park commissioners, also within designated limits. We think the fact the council was given the authority by section 370.5, as to boards of park commissioners, and was not given the same power here, is of considerable significance.

IV. The defendants urge that it is not in accord with good practice to permit any public body to fix the salaries of its members; and it is pointed out that not even the members of the Iowa legislature or city or town councils may raise their salaries during their terms in office. With this general principle we may agree. The temptation to vote additional compensation out of public funds should not be placed before the individuals making up these bodies. As to the legislature the prohibition is found in section 25 of Article III of the Constitution. Code section 368A.21 provides "nor shall the emoluments of any city or town officer be changed during the term for which he has been elected." This may be said to have expressed the legislative intent; yet such intent may vary from time to time. This is demonstrated by chapter 272, Acts of the Fifty-eighth General Assembly, which permits salaries of mayors and councilmen in certain cities to be raised instanter, "anything in section three hundred sixty-eight A point twenty-one (368A.21) of the Code or any other statute to the contrary notwithstanding."

So it is evident the intent of the legislature that public bodies should not be free to fix their own salaries is not always firm. We must conclude that its intent was that members of the co-ordinated boards in special charter cities might fix their own salaries, within the far from generous boundaries of section 420.300. The stipulation of facts shows that during the year 1960 the gross revenues of the water and light plants in the City of Muscatine were $1,687,107.91; that after setting aside $239,378 for depreciation there remained a net income of $81,368.90; and that the book value of the physical assets of the plants was $9,953,458.72. For the management of these properties the maximum that may be paid to the board of five members is a total of $3000. No such grave injustice as the defendants envision is apparent.

The legislature might well have spoken more clearly upon the subject of compensation and whether it is to be fixed by the council or the board itself. The governing statutes, however, seem to indicate the power lies with the board within the boundaries of section 420.300. The judgment of the trial court was correct.—Affirmed.

All Justices concur.